707 So.2d 111 (1998)
MARSH CATTLE FARMS, Plaintiff-Appellant,
v.
Charles L. VINING, Jr., et al., Defendant-Appellee.
No. 30156-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1998.
Writ Denied April 24, 1998.
*113 Leroy Smith, Jr., Tallulah, for Plaintiff-Appellant.
Vicki V. Baker, Tallulah, M. Randall Donald, Monroe, for Defendant-Appellee.
Before HIGHTOWER, GASKINS and CARAWAY, JJ.
GASKINS, Judge.
The plaintiff, Marsh Cattle Farms, claimed it owned an undivided ¾ interest and the defendants owned an undivided ¼ interest in a piece of property in East Carroll Parish. The plaintiff sought to invoke a partition by licitation. The defendants, Charles L. Vining, Jr., Randall E. Vining, Bobbie Jean Donald, and Darlene Duncan, contended that they and the plaintiff each owned a ½ interest in the property and that the property was subject to division in kind. The trial court agreed with the defendants and the plaintiff appeals. For the following reasons, we reverse the trial court judgment and remand for further proceedings.

FACTS
The disputed property is located on the Mississippi River and was originally comprised of approximately 165 acres.[1] However, over the years, due to erosion, there is now only 80-100 acres. The disputed acreage was owned ½ by Charles L. Vining, Sr. and ½ by Gaines Florence. Mr. Vining was married to the defendants' mother, Bobbie Jean Vining Beatty. During the course of divorce proceedings, Mrs. Beatty seized Mr. Vining's interest in the property in satisfaction of a judgment against him. To pay her legal fees, Mrs. Beatty executed a deed to her attorneys, John M. Hester and Mason P. Gilfoil, reciting that she conveyed an undivided ½ interest in the disputed property. The defendants argue that she intended to give only ½ of her ½ interest, or a ¼ interest in the property to the lawyers and showed that Mrs. Beatty paid taxes on ¼ of the property *114 for many years after the deed to Mr. Hester and Mr. Gilfoil. Prior to her death, Mrs. Beatty deeded her interest in the property to her children, Charles L. Vining, Jr., Randall E. Vining, Bobbie Jean Donald, and Darlene Duncan.
In 1988, Marsh Cattle Farms acquired from the heirs of Mr. Gilfoil and Mr. Hester all their right, title and interest in the property. Plaintiffs contend this was a ½ interest in the property as a whole, the defendants contend it was a ¼ interest. In 1990, Marsh Cattle Farms purchased a ¼ interest in the property from another owner. In 1988, the defendants also purchased a ¼ interest in the property from another owner.
On September 12, 1994, Marsh Cattle Farms filed a petition for licitation against Charles L. Vining, Jr., Randall E. Vining, Bobbie Jean Donald, and Darlene Duncan, claiming that the defendants owned an undivided ¼ interest in the disputed property. The plaintiff claimed that the property was not subject to partition in kind and requested a partition by licitation and a public auction.
The defendants answered, asking for a division in kind. They then transferred their interest in the property to the Vining Family Real Estate Trust and moved to substitute that entity as the defendant.
A hearing on the merits was held on December 15, 1995. The plaintiff introduced the documents comprising the chain of title to the property. Paul Marsh, a partner in the Marsh Cattle Farms, testified that the plaintiff believes it owns a ¾ interest in the property and that the north and south halves of the property are not similar in characteristics. He claimed that the south end is higher and has more timber, while the north end is flooded by the Mississippi River for about a month and a half each year.
The plaintiff also presented the testimony of Kirk R. Morley, a real estate appraiser who stated that he had reviewed the property to determine if it could be divided in kind and determined that it could not. After examining maps from the Corp of Engineers and considering the factors of flooding, drainage, wildlife, timber and access, he determined that dividing the property would decrease its value. He estimated that the tract contained about 100 acres and that the south end has timber worth about $5,000.00 or $50.00 per acre. The timber at the north end was worth only about $7.00 per acre. He opined that the entire property was worth about $25,750.00 divided and $30,600.00 undivided. He stated that the property is not subject to division in kind and the highest and best use of the property is for deer hunting.
The defendant introduced the testimony of its own expert in real estate valuation, Earl Banks, who stated that the property has no value for farming, that there is no significant difference in any portion of the property and that it could be subject to division in kind. He stated that the property is worth $250.00-$300.00 per acre, but later said that he would not pay $165.00 per acre for the land and would not try to sell it for more than that.
At trial, the defendant asserted that it owned an undivided ½ interest in the property and not a ¼ interest as contended by the plaintiff. The defendant disputed the contention that the deed from Mrs. Beatty to Mr. Hester and Mr. Gilfoil conveyed to them her entire undivided ½ interest in the property. To establish the ambiguity of the deed from Mrs. Beatty to Mr. Gilfoil and Mr. Hester, purportedly conveying all her interest in the property, Charles Vining, Jr. testified that he accompanied his mother to Mr. Hester and Mr. Gilfoil's law office and that they agreed that the lawyers would receive as their fee ½ of what they recovered for his mother. He also claimed that his mother received the property from his father in satisfaction of a money judgment against him obtained in the course of their divorce suit. Mr. Vining stated that he frequently paid the taxes on the property for his mother and that through the years, he took her to the property on several occasions.
The tax records for East Carroll Parish showed that Mrs. Beatty, Mr. Hester, Mr. Gilfoil, the defendants and the plaintiffs have all been assessed with varying interests in the property over the years. Testimony also showed that the parties had paid the taxes as *115 assessed over the years and Marsh Cattle Farms never questioned the assessment.
On September 16, 1996, the trial court filed a judgment in favor of the defendant, ordering a partition in kind and appointing a notary public to make a division of the property. In reasons for judgment, the court found that the issues presented were the amount of property owned by the defendant and whether the property could be partitioned in kind.
On the issue of ownership, the court noted that the deed from Mrs. Beatty to Mr. Hester and Mr. Gilfoil stated that it was for her undivided ½ interest in the property and that on its face, that document appeared to unambiguously convey all her interest in the property to the attorneys. However, the court found that other documents and evidence in the case established that the deed was ambiguous. The court noted testimony that Mrs. Beatty intended to convey only ½ of her interest in the property to Mr. Hester and Mr. Gilfoil. The court found that the plaintiffs and defendants each own a ½ interest in the property now.
Regarding the type of partition, the court noted that partition in kind is favored and that the burden of proof is on the party seeking partition by licitation to show that the property cannot be divided in kind. The court found that the best use of the property is for hunting and that there is no difference in the hunting quality from one end of the property or the other. The court found that the physical characteristics of the property require a division into north and south halves. The court found that there is access to both parts and that the division will not diminish the value of the property. The court noted that the south end is more valuable because of timber and pulpwood and found the value of the timber on the south end to be $5,000.00 and the timber value on the north end to be $350.00. Therefore, the court ordered that the recipient of the south end make an equalizing payment of $4,650.00 to the recipient of the north end.
On September 30, 1996, the plaintiff filed a motion for new trial, claiming that the decision of the trial court was contrary to the law and evidence. The plaintiff claimed the evidence showed that the value of the north end of the property was $7,550.00 and the value of the south end was $16,650.00. Because there is a difference of more than 100%, the plaintiff contended the partition in kind was erroneous. A hearing on the motion was held on January 8, 1997. The plaintiff argued that the large equalization payment ordered by the court demonstrated that the parcels cannot be equal or nearly equal. The court stated that it maintained that partition in kind was proper, but that the equalization payment for the timber should have been ½ of $4650.00, not the entire amount. On February 21, 1997, the trial court filed an amended judgment identical to the previous judgment, with the exception that the equalizing payment was set at $2,325.00. The plaintiff appealed the trial court judgment.

OWNERSHIP
The plaintiff argues that the trial court erred in finding that the defendants owned an undivided one-half interest in the disputed property. The plaintiff asserts that the deed from Mrs. Beatty to Mr. Hester and Mr. Gilfoil unambiguously sets forth that she conveyed her entire interest in the property to the lawyers. According to plaintiff, unless there is ambiguity in a document, it is not to be disturbed. Plaintiff points out that, because the document was not ambiguous and the parties to the document are now deceased, the trial court should not have allowed the self-serving parol evidence offered by the defendant to establish that the intent of the document was other than specified within its four corners. This argument has merit.
As stated above, Mrs. Beatty received C.L. Vining's undivided ½ interest in the subject property at a sheriff's sale, in satisfaction of a judgment against him. See Beatty v. Vining, 147 So.2d 37 (La.App. 2d Cir.1962). On October 23, 1963, Mrs. Beatty conveyed to John M. Hester and Mason P. Gilfoil, "An undivided one-half (½) interest in and to" the disputed property.
In construing the 1963 deed, the trial court stated, "Taken alone, the conveyance from Bobbie Jean White Vining Beatty to John Hester and Mason Gilfoil is not ambiguous.
*116 It clearly purports to convey an undivided one-half interest in and to the subject property." The court then found that, "However, when considered together with other documents in the chain of title, a conflict arises." The court noted that Mr. Gilfoil's succession puts his heirs in possession of an undivided 1/8 interest in the disputed property, which interest was then conveyed to Mrs. Gilfoil. Similarly, in Mr. Hester's succession, his heirs were placed in possession of an undivided 1/8 interest in the property. Further, in January 1988, Mrs. Beatty sought to convey to her children, the defendants in this case, an undivided ¼ interest in the disputed property. The court also noted that the tax assessment records show that Mrs. Beatty, the Gilfoils and the Hesters were assessed with varying amounts of tax on the property after the 1963 deed from Mrs. Beatty to Mr. Hester and Mr. Gilfoil. Based upon these subsequent documents and based upon the tax assessments, the trial court found the 1963 deed to be ambiguous, found that Mrs. Beatty conveyed to Mr. Hester and Mr. Gilfoil only an undivided ¼ interest in the property and that she retained a ¼ interest. In so doing, the trial court erred.
The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046.
The cardinal rule to be followed in construing deeds, uncertain because of ambiguity, is to ascertain the intention of the parties from the entire language of the deed. Williams v. Hawthorne, 601 So.2d 672 (La. App. 2d Cir.1992); Bidstrup v. Brignac, 93-537 (La.App. 3d Cir. 2/2/94) 631 So.2d 637; Bouligny v. Delatte, 550 So.2d 929 (La.App. 3d Cir.1989). In the interpretation of deeds, the intention of the parties must be gathered from an inspection of the instrument itself, without the aid of extrinsic evidence, if their intentions can be thus ascertained. If the description is so ambiguous as to leave doubt as to the parties' intent, the court may resort to extrinsic evidence as an aid in construction. Williams v. Hawthorne, supra; City of Eunice v. Sunland Properties, 597 So.2d 1198 (La.App. 3d Cir.1992); Doyal v. Pickett, 628 So.2d 184 (La.App. 2d Cir.1993).
It must be assumed that each word and phrase used in the description of property was intended to have some meaning and where the description is vague or incomplete, then a construction should be adopted which best harmonizes the intent of the parties. Williams v. Hawthorne, supra.
In the present case, and as noted by the trial court, there is no ambiguity in the deed from Mrs. Beatty to Mr. Gilfoil and Mr. Hester. The term "undivided one-half interest" is not ambiguous. As set forth above, the intention of the parties is to be construed from an inspection of the instrument itself, without the aid of extrinsic evidence, if their intentions can be thus ascertained. Because the description is not so ambiguous as to leave doubt as to the parties' intent, extrinsic evidence may not be used in this case as an aid in construction. Because there was no ambiguity in the deed, the trial court erred in going outside the instrument itself to find an ambiguity.[2]
*117 Even if the trial court's resort to extrinsic evidence had been proper in this case, the judgments of possession and tax assessment records are not definitive proof of ownership. Regarding judgments of possession, La. C.C.P. art. 3062 sets forth the effect of such a judgment. The article states that a judgment of possession rendered in a succession proceeding shall be prima facie evidence of the relationship to the deceased of the parties recognized therein as heir, legatee, surviving spouse in community, or usufructuary, as the case may be, and of their right to the possession of the estate of the deceased. A judgment of possession is prima facie evidence of the right of heirs in whose favor it was rendered to take possession of the decedent's estate; however it is not a basis for a plea of res judicata or conclusive evidence against persons having an adverse interest in or claim against the estate. Quiett v. Moore's Estate, 378 So.2d 362 (La.1979); Launey v. Barrouse, 509 So.2d 734 (La.App. 3d Cir.1987). Therefore, judgments of possession merely recognize the rights of the heirs to the estate of the decedent.
Further, a judgment of possession is not required to contain a particular description of the immovable property affected by the judgment. We note that La. C.C.P. art.1919 requires all final judgments which affect title to immovable property to describe the immovable property affected with particularity. However, the article specifies that it does not apply to judgments in such proceedings recognizing heirs or legatees and sending them into possession. Also, comment (c) to La. C.C.P. art. 3061 notes that the rule of La. C.C.P. art 1919 requiring the description of immovable property with particularity is not essential to the validity of a judgment of possession, further illustrating the difference between a judgment conveying title and a judgment of possession.
We also note that the trial court erred in relying upon the tax assessment roles to establish the degree of ownership that the parties held in this property. This is the type of extrinsic evidence which may only be considered after finding that a deed is so ambiguous that the intent of the parties cannot be ascertained within the instrument itself. Sohio Petroleum Company v. Hebert, 146 So.2d 530 (La.App. 3d Cir.1962), writ refused 243 La. 1004, 149 So.2d 763 (1963); Meaux v. Southdown Lands, Inc., 361 So.2d 974 (La.App. 3d Cir.1978). Because the 1963 deed is not so ambiguous as to allow resort to extrinsic evidence, the trial court erred in considering the tax assessment roles.
Accordingly, we find, as did the trial court, that there is no ambiguity in the 1963 deed from Mrs. Beatty to Mr. Hester and Mr. Gilfoil. We find that the trial court erred in considering extrinsic evidence to find an ambiguity in the property interest conveyed in that deed. We reverse and vacate the trial court judgment regarding ownership and find that Mrs. Bobbie Jean White Vining Beatty conveyed to Mr. Hester and Mr. Gilfoil her entire one-half undivided interest in the subject property. Therefore, as argued by the plaintiff, the defendant now owns an undivided ¼ interest in the property and the plaintiff owns an undivided ¾ interest.[3]

PARTITION
The plaintiff argues that the trial court erred in finding that the property was subject to partition in kind. Plaintiff contends that, because the south half is better for timber growing than the north half and because there is a great divergence in value in the south and north halves of the land, the property is not divisible in kind. Plaintiff also contends that dividing the tract into smaller lots will diminish the value and therefore, it is not subject to division in kind. We find that the trial court erred in ordering a partition in kind in this case.
*118 No one can be compelled to hold property with another; a division of the thing held in common may be demanded by the action of partition. Tri-State Concrete Company v. Stephens, 406 So.2d 205 (La. 1981); La. C.C. arts. 543 and 807. The general rule is that partition in kind is favored over partition by licitation and unless the property is indivisible by nature or cannot be conveniently divided, the court shall order the partition to be in kind. La. C.C. art. 810; La. C.C.P. art. 4606; Tri-State Concrete Company v. Stephens, supra; Simpson v. Baker, 29,090 (La.App.2d Cir. 1/22/97), 687 So.2d 1079, writ denied 97-0484 (La.4/497), 692 So.2d 420; Birdwell v. Jeffery, 486 So.2d 1094 (La.App. 2d Cir.1986). Property cannot be conveniently divided when a diminution of its value, or loss or inconvenience of one if its owners would be the consequence of dividing it. La. C.C. 811; Birdwell v. Jeffery, supra. The burden of proof is on the party seeking partition by licitation to prove that property cannot be divided in kind. Birdwell v. Jeffery, supra.
In order to effect a partition in kind, the property must be divided into lots of equal or nearly equal value. It is the function of experts to form the lots which thereafter must be drawn by chance, and not selected, by the co-owners. It is not within the power or province of the judge or the experts to suggest that a certain part or parts of the property be set apart or allocated to one of the owners. There must be as many lots as there are shares or roots involved. Tri-State Concrete Company, Inc. v. Stephens, supra; Kisatchie Investors, Inc. v. Broussard, 397 So.2d 67 (La.App. 2d Cir. 1981).
Whether immovable property should be divided in kind or by licitation is a question of fact to be decided by the trial court. Loupe v. Bybee, 570 So.2d 31 (La.App. 3d Cir.1990).
Kirk R. Morley, an expert in property appraisal examined the property to determine its value and to determine if it was susceptible to division in kind. Mr. Morley was operating under the assumption that the property would be divided into only two parts. He found that the highest and best use of the property was for deer hunting. He noted a significant difference between the north and south halves of the property, finding that the north half is marshland, frequently floods, has very little marketable timber and is not as suitable for deer hunting as the south half. He also found that the north half has limited access while the south half has access from a public road. Mr. Morley found that the south half of the property has timber worth $5,000.00 whereas the north half has timber valued at $350.00. He found that the property had a value of $30,600.00 undivided and $25,750.00, divided.
By contrast, Earl Banks, also an expert in property valuation, said that division of the property would not affect its value because it was all waste land with very little value.
Because the plaintiff owns an undivided ¾ interest in the property and the defendant owns an undivided ¼ interest, to effect a partition in kind, the property would have to be divided into four equal parts and the plaintiff and defendant would then draw for their share of the property. The property is not of equal value throughout and there is the possibility that the tracts drawn would not be contiguous and would not have adequate access. Further, as stated by Mr. Morley, division of the property would result in a diminution of its value. Therefore, because the partition in kind would result in a diminution of the value of the property and loss or inconvenience to one or more of the owners, we find that the property is not susceptible to division in kind. Accordingly, the property must be partitioned by licitation.

DECREE
For the reasons set forth above, we reverse the trial court judgment finding that the plaintiff and defendant each own an undivided one-half interest in the subject property and ordering a partition in kind. We find that the plaintiff, Marsh Cattle Farms, owns an undivided ¾ interest in the property and the defendant, the Vining Family Real Estate Trust, owns an undivided ¼ interest. We also find that the property is not susceptible to partition in kind and order a partition *119 by licitation in accordance with law. This action is remanded to the district court for further proceedings. Costs of this appeal are to be born by the parties in proportion to their respective interest in the property. Costs in the trial court are to be born in accordance with the trial court's judgment assessing costs.
REVERSED AND REMANDED.
NOTES
[1] The legal description of the disputed property is as follows:

A tract of land lying in the S ½ of Section 56 and the SW ¼ of Section 57, in Township 19 North, Range 13 East, between the old and new levees, more particularly described as follows:
Starting at an iron pipe marking the ¼ corner on the West line of said Section 56; thence N. 89 02' E. along the North line of the ½ of said Section 56, a distance of 1051.9 feet to the East right-of-way line of a new Government levee, the POINT OF BEGINNING; thence continuing N. 89 02' E along said north line, a distance of 2444.7 feet to the West right-of-way line of an old levee; thence, following said right-of-way line S. 56 54' E., a distance of 1350.1 feet; thence S. 36 39' E., a distance of 2490.0 feet to the South line of said Section 56; thence N. 89 37' W., along the South lines of said Sections 57 and 56, a distance of 2464.2 feet to the East right-of-way line of said new Government levee; thence N. 44 08' W. along said right-of-way line, a distance of 3730.6 feet to the POINT OF BEGINNING, containing, 165.731 acres, more or less.
[2] We also note that, had Mrs. Beatty and/or Mr. Hester and Mr. Gilfoil, or their heirs, determined that the deed contained a mistake in the amount of property conveyed, they could have undertaken to reform the deed. Reformation of instruments is an equitable remedy which lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties. Lewis v. Saucer, 26,685 (La.App.2d Cir. 4/5/95), 653 So.2d 1254, and cases cited therein. It is a personal action, even when applied to real estate, in which the burden is on the person seeking reformation to establish mutual error or mistake by clear and convincing proof, parol evidence being admissible for this purpose. Since the action is personal, a written instrument may be reformed so as to make it express truly and correctly the intention of the parties, provided the rights of third parties have not intervened. An instrument may not be reformed or corrected to the prejudice of third parties who are authorized to rely on the integrity of the instrument, or who have relied on the public records. Lewis v. Saucer, supra. In the present case, Marsh Cattle Farms is a third party, having purchased an interest in the property from the heirs of Mr. Hester and Mr. Gilfoil, and are entitled to rely on the public records doctrine.
[3] We note that in its brief to this court, the defendant also argued that ownership of an undivided one-half interest in the property was acquired by operation of either ten year or thirty year acquisitive prescription under La. C.C. arts. 3473 or 3486. However, prescription must be specially pleaded. La. C.C. arts. 927 and 3452. Although argued, the defendant did not plead acquisitive prescription in the trial court or in this court, therefore the issue is not properly before us. See Aymond v. Smith, 476 So.2d 1081 (La.App. 3d Cir.1985); Messina v. Michael, 324 So.2d 837 (La.App. 1 st Cir.1975), writ denied 326 So.2d 381 (La.1976).