732 So.2d 663 (1999)
Shelby McNEAL, Elton McNeal, Myrtle M. Waggle, Willis McNeal, Martha McNeal Gray, Fredrick McNeal, Lula Mae McNeal Paul, John McNeal, Leon McNeal, Mary McNeal, & Lorine M. Edwards, Plaintiffs-Appellees,
v.
Elbert McNEAL, Defendant-Appellant.
No. 98-1586.
Court of Appeal of Louisiana, Third Circuit.
March 31, 1999.
Charles Addison Riddle, III, Marksville, for Shelby McNeal et al.
David Edwin Lafargue, Marksville, for Elbert McNeal.
BEFORE: YELVERTON, WOODARD, and GREMILLION, Judges.
YELVERTON, J.
This is an appeal from a judgment which ordered that property be partitioned in kind. The appellant, Elbert McNeal, argues that the court did not follow the mandates of the law in determining whether the property could be partitioned in kind. He claims that the property could not be partitioned in kind and seeks a sale by licitation.

FACTS
The property consists of 14.05 acres in Avoyelles Parish with frontage on Louisiana Highway 107. It was owned by Lemmie McNeal and his second wife, Vela. *664 Lemmie died in 1983 leaving twenty-one children, five from his first marriage and sixteen from his second marriage. After his death, Vela owned half of the property in indivision with the twenty-one children who owned the other half. Vela had a legal usufruct over the whole 14.05 acres, including the house located on the property. In 1985 eleven of the children, ten of her own children and one child from the first marriage, sold their interest in the property to Vela. Subsequently, in 1986, Vela sold all of her interest in the property to her son Elbert but reserved a usufruct over the property.
On June 27, 1997, the ten children who still owned part of the property sued for a partition naming Elbert as the defendant.[1] At the trial the ten petitioning co-owners agreed to combine their interests for partition purposes. The trial court found that Elbert owned 76.19% of the property and the ten petitioning co-owners owned 23.81%. The court then ordered that Robert Dupuy, an appraiser and notary, appraise the property and render an opinion as to whether the property was susceptible to division based on the percentages of ownership.
Using comparable sales, Dupuy appraised the property and improvements at $44,500. The house sat on a fenced lot of 1.05 acres with a frontage of 214 feet on Highway 107. He valued the house and this acreage at $25,000. The remaining 13 acres were valued at $1,500 an acre for a total of $19,500. Dupuy then made the following recommendation for partition:

(1) Shelby McNeal et al 23.81%
 $44,500 × 23.81% = $10,595.45
 7.064 acres @ $1,500/ac. = $ 10,596.00
(2) Elbert McNeal 76.19%
 $44,500 × 76.19 = $ 33,904.55
 1.05 acre & improvements = $ 25,000.00
 5.936 acres @ $1,500/acre = 8,904.00
 _____ ________
 6.986 acres $ 33,904.00
TOTALS VALUES
ACREAGE
7.064 ACRES $ 10,596.00
6.986 ACRES & IMPROVEMENTS 33,904.00
_____ __________
14.050 ACRES $ 44,500.00

An attached plat indicated the division of the property which was almost a split down the middle with Elbert receiving the 6.986 acres with the house on it. The trial court entered judgment dividing the property as recommended by Dupuy. Elbert appeals this judgment.

PARTITION
No one may be compelled to hold a thing in indivision with another, and any co-owner has a right to demand partition of a thing held in indivision. La.Civ.Code art. 807. In the absence of an agreement by the co-owners as to the mode of partition, a co-owner may demand judicial partition. La.Civ.Code art. 809. "The court shall decree partition in kind when the thing held in indivision is susceptible to division into as many lots of nearly equal value as there are shares and the aggregate value of all lots is not significantly *665 lower than the value of the property in the state of indivision." La.Civ.Code art. 810. The party seeking a partition by licitation has the burden of proving that the property cannot be divided in kind. Marsh Cattle Farms v. Vining, 30,156 (La.App. 2 Cir. 1/23/98); 707 So.2d 111, writ denied, 98-0478 (La.4/24/98); 717 So.2d 1167.
On appeal Elbert's arguments that the property could not be divided in kind concern application of the legal rules regarding partitions in kind rather than the facts surrounding the property itself. Elbert does not complain that the division was in any way inequitable nor that it decreased the value of the property. He claims that the trial court's judgment which accepted the plan submitted by Dupuy was contrary to Article 810 because the lots formulated by Dupuy were not of "nearly equal value." He also claims that the trial court erred in its judgment because the parties did not draw the lots by chance as required by La.Civ.Code art. 1367.
In Tri-State Concrete Co., Inc. v. Stephens, 406 So.2d 205, 207-208 (La.1981), the supreme court, relying on La.Civ.Code arts. 1364 and 1367, explained the process of partitioning property in kind as follows:
In order to effect a partition in kind, the property must be divided into lots of equal or nearly equal value. It is the function of experts to form the lots which thereafter must be drawn by chance, and not selected, by the co-owners. It is not within the power or province of the judge or the experts to suggest that a certain part or parts of the property be set apart or allocated to one of the co-owners. There must be as many lots as there are shares or roots involved.
"In other words, if property is divisible in kind, then it must be divided into lots of equal value, equal to the lowest common denominator of ownership. At that point, each owner must then by lot draw a number of lots equivalent to his or her proportionate ownership." Bulliard v. Bienvenu, 95-297, p. 5 (La.App. 3 Cir. 10/4/95); 663 So.2d 373, 375 (citation omitted).
Expanding on the definition of what was meant by dividing the property into lots, the second circuit in Simpson v. Baker, 29,090 (La.App. 2 Cir. 1/22/97); 687 So.2d 1079, writ denied, 97-0484 (La.4/4/97); 692 So.2d 420, explained that the trial court in that case was not legally required to use 15 as the number of lots or shares necessary to effect a partition in kind in an action brought by owners of 2/15 of land against the owner of 13/15 of land. The second circuit found it appropriate to express the unit as divided into essentially seven parts, and thus, the division of property into seven lots allowed plaintiffs as owners of 2/15 to receive one of the seven lots of land for their share of ownership without greatly diminishing the value of the property. The remaining property was awarded to the owners of the 13/15 of land.
In the present case the notary expressed the ownership of the land in percentages. The petitioning co-owners, who chose to combine their interests for partition purposes, own 10/42 or 5/21 or 23.815% of the land, and Elbert owns 32/42 or 16/21 or 76.19% of the land. However, considering that there are now two shares the nature of the land does not allow for a division of the land into lots of nearly equal value as there are shares.
Applying the approach taken by Simpson, 687 So.2d 1079, the common denominator is essentially four. The land would have to be divided into four equal lots since the petitioning co-owners' interest is approximately a fourth of the value of the land. If this could be done, the petitioning co-owners could then draw by lot one of the four lots as their share, with the remaining three lots going to Elbert as his share. This was not done in this case. Relying on Dupuy's plan of partition, the trial court specifically allocated a particular lot to the petitioning co-owners. The trial court erred in this method of partitioning the property in kind since the co-owners *666 must draw the appropriate number of lots by chance, and it is not for the experts to suggest that a certain part of the property be allocated to the co-owners. See Bulliard, 663 So.2d 373.
Of course, in this case the property cannot be divided into four equal, or nearly equal, lots. The value of the house alone is in excess of the share that the petitioning co-owners are entitled to as indicated by the appraisal of Dupuy. The petitioning co-owners are only entitled to property valued at $10,595.45, and the house and 1.05 acres where it sits are worth $25,000. It is not possible to divide this property into four lots of equal value due to the value of the house.
Although we find that Dupuy and the trial court did a commendable job in trying to divide this property between the co-owners, we find that under the mandates of the law, the property is not subject to a partition in kind between these co-owners. Pursuant to La.Civ.Code art. 811, the 14.05 acres and house must be partitioned by licitation and the proceeds distributed to the co-owners in proportion to their shares. We recognize that Vela's usufruct over the whole property will not be affected by the sale of the property pursuant to La.Civ.Code art. 812.

COSTS
Elbert also argues that the trial court erred in assessing him with 76% of the costs which includes the appraisal fees of Dupuy. He claims that it was the ten petitioning co-owners who requested that the court appoint an appraiser to effect a partition, so it is only fair that they be assessed with the costs.
Pursuant to La.Code Civ.P. art.1920, the trial court may render judgment for costs as it may consider equitable. We note that it was the valuation placed on the property that provided Elbert with the proof he needed to establish that the property was not subject to a partition in kind. We find that the allocation of 76% of the costs to him fair since he owns 76% of the property. We also consider the fact that now that the property will be sold, La. Code Civ.P. art. 2373 provides that the co-owners will receive the proceeds after the costs are deducted. Since Elbert will receive approximately 76% of the revenues, it is only fair that he bear 76% of the costs. This argument has no merit.
For the reasons set forth in this opinion, we reverse the judgment of the trial court ordering a partition in kind. We order a partition by licitation in accordance with the law. This action is remanded to the district court for further proceedings. Costs of this appeal are to be born by the parties in proportion to their respective interests in the property.
REVERSED AND REMANDED.
NOTES
[1] The petitioning co-owners are Shelby McNeal, Elton McNeal, Myrtle M. Waggle, Willis McNeal, Martha McNeal Gray, Lula Mae McNeal Paul, John McNeal, Leon McNeal, Mary McNeal, and Lorine M. Edwards. Fredrick McNeal was originally listed as a petitioning co-owner but admitted that he no longer owned an interest in the property since he was one of the eleven children who sold his interest to Vela. The judgment in this case granted an exception of no cause of action with respect to Fredrick and dismissed his claim.