833 So.2d 1154 (2002)
ARK-LA-MISS TIMBER COMPANY, INC., Plaintiff-Appellee
v.
Paul B. WILKINS, Defendant-Appellant.
No. 36,485-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
*1155 McLeod Verlander, by Robert P. McLeod, Jr., Donald C. Douglas, Jr., Monroe, for Appellant.
Cook, Yancey, King & Galloway, by Bernard S. Johnson, Shreveport, William P. Buckley, for Appellee.
Before STEWART, PEATROSS and KOSTELKA, JJ.
STEWART, J.
Ark-La-Miss Timber Co., Inc., ("ALM"), filed this suit for partition of 1,286 acres of land in Caldwell Parish. ALM and Paul B. Wilkins are co-owners of the property. Wilkins filed a reconventional demand to be recognized as separate owner of a log cabin located on the property. The trial court found in favor of Wilkins with regard to ownership of the cabin, but ordered that the property be partitioned *1156 by licitation. Wilkins appeals those portions of the judgment ordering partition by licitation and ordering him to pay all costs. In answer to the appeal, ALM seeks reversal of the finding that Wilkins owns the cabin. For the reasons expressed herein, we amend the trial court's judgment, and affirm as amended.

FACTS
In 1983, Wilkins, Judge Ronald L. Lewellyan, and Quinton May purchased 1,286 acres of land in Caldwell Parish from International Paper for a total price of $525,000. Lewellyan and Wilkins later bought out May's share, and Lewellyan transferred his share to ALM, a land and timber management company of which he is president and sole shareholder. Consequently, Wilkins and ALM co-own the entire acreage, which is described as follows:
The SW 1/4 of the SW1/4; E½ of SW 1/4; S½ of SE 1/4 of Section 15, T 14 N, R 2 E;
The NE 1/4; NE 1/4 of NW 1/4; NE 1/4 of SE 1/4 of Section 22, T 14 N, R 2 E;
The SW 1/4 of NE 1/4; S½ of NW 1/4; S ½ of Section 23, T 14 N, R 2 E;
The E 1/2; E½ of NW 1/4 of Section 26, T 14 N, R 2 E. For purposes of this opinion and consistent with the testimony and evidence at trial, references may be made to the east half and the west half of the property.
The property is located in the Castor Creek flood basin. It is traversed by creeks and consists of bottomland hardwood areas and swampy areas. It is subject to flooding during rainy periods. Much of the land, particularly in the eastern half of the property, can be reached only by four-wheeler. The land is used primarily for recreational purposes, such as hunting and fishing, and for timber production. After purchasing the property, the parties sold timber, which was thinned or select cut from throughout the property, for $175,000.
In 1988, Wilkins built a log cabin on a ridge located on the west half of the property. Wilkins also had water and utilities connected to the cabin at his own expense. The cabin was regularly used by Wilkins, Lewellyan, and others over the years. At the time of trial, Wilkins was living in the cabin with his family.
The only legal route of access to the property is by way of a logging road built by International Paper in 1970. This road runs onto the west half of the property and then forks to the northwest and southeast. The northwest fork goes to the cabin and can generally be used for vehicular travel; the southeast fork goes into the east half of the property and includes a series of bridges built by the co-owners over the years. These bridges support four-wheeler travel only. The northwest fork has been better maintained over the years than the southeast fork, which has fallen into some disrepair due to areas and culverts that have been washed out and other areas that have become overgrown with foliage. The parties have regularly accessed the east half of the property by way of a private road owned by Plum Creek Timber Company. The Plum Creek road is located off Louisiana Highway 4 and runs into the northeast section of the property. However, the parties do not have any legal right to use this road, and Plum Creek denied a request by Wilkins made prior to trial to furnish a right of way.
The legal dispute arose when ALM filed a petition seeking a judicial partition. In answer, Wilkins stated that he too desired judicial partition of the co-owned property. He also asserted a reconventional demand to be recognized as separate owner of the cabin. The court appointed an expert, Merlin Smith, to survey the property and timber thereon and to provide a report as *1157 to his views on an equitable division of the property. Smith submitted his report to the court, but this report was not submitted as evidence at trial. Wilkins also commissioned Smith to perform a timber cruise of the property. The data from the cruise was used by Wilkins' expert appraiser to come up with a proposed equitable division of the property for trial purposes.
After two days of testimony, the trial judge took the matter under advisement, while indicating that he was leaning toward partition by licitation due to concerns about adequate access to the east half of the property and the existence of the cabin on the west half of the property. The trial judge ordered the parties to file post-trial briefs. On October 26, 2001, after the matter had been submitted for a decision, Wilkins filed a motion to reopen the case and supplement the record with additional proposed divisions based on information already in the record to address the trial judge's concerns regarding adequate access. The trial judge denied the motion in a written ruling on October 30, 2001, in which he explained that he did not express his concerns to the parties for the purpose of soliciting additional evidence, but in an effort to have them address these concerns in their post-trial briefs and in light of the evidence presented at trial.
On November 20, 2001, the trial judge rendered written reasons for judgment. The trial judge recognized Wilkins' separate ownership of the cabin. The trial judge noted that Wilkins built and paid for the cabin. In addition, the trial judge found no clear understanding between the parties as to any conveyance of an ownership interest in the cabin. In accordance with expert testimony, the trial judge valued the improvement at $69,500. While noting partition in kind to be favored under the law, the trial judge concluded it could not be done in a manner equitable to both parties. Two factors complicated a partition in kind. First was the presence of a road for vehicular access and a utility right of way on the west half of the property only. Second was the location of the cabin on the west half, the ownership of which necessitated a sale of the entire property and compensation of the cabin's value to its owner from the proceeds. The trial judge concluded that use of the same road by owners of the west half and east half would not be feasible due to problems that would arise in maintaining the road. A judgment in accordance with these reasons was rendered on January 7, 2002, ordering partition by licitation with proceeds of the sale to be attributed first to costs of the sale, then to payment of the value of the cabin to Wilkins, and then to be divided equally between ALM and Wilkins. Costs were assessed against Wilkins.
Wilkins filed a motion for a new trial contending that the property could be divided in kind with both parties having equal access and utilities, that the trial judge erroneously considered the separate ownership of the cabin in its analysis, that the judgment failed to appoint a notary as required by La. C.C.P. art. 4605, and that the judgment improperly assessed all costs to him. The trial judge granted the motion as to the notary issue and appointed a notary as required by law. The motion was denied as to all other issues raised. Wilkins then appealed the merits of the partition by licitation, the denial of the motion to supplement the record, and the assessment of costs to him. ALM answered the appeal to assert error as to the recognition of Wilkins' separate ownership of the cabin.

DISCUSSION

Ownership of the Cabin
ALM argues that the trial court erred in failing to consider the presumption *1158 of La. C.C. art. 491 and the numerous exhibits showing payments over the years, including a one time payment of $10,000, of expenses associated with repair and maintenance of the cabin. ALM contends that the presumption and evidence requires reversal of the trial court's finding that Wilkins owns the house. We disagree with this contention.
La. C.C. art. 804 provides, in relevant part, "Substantial alterations or substantial improvements to the thing held in indivision may be undertaken only with the consent of all the owners." La. C.C. art. 491, referred to by ALM, sets forth the general principle that buildings or other constructions permanently attached to the ground may belong to a person other than the owner of the ground, but are presumed to belong to the owner of the ground absent a filed instrument evidencing separate ownership. However, a more specific provision governs ownership of improvements. La. C.C. art. 493 provides, in relevant part, "Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them." Comment B of the Revision Comments of 1979 states:
(B) Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent, as by a lessee, a coowner, a purchaser under a contract to sell, or a precarious possessor, belong to him who made them. Such separate ownership may be asserted toward third persons when it is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located.
This provision governs ownership of the cabin between the co-owners, since the cabin was built by Wilkins with the consent and knowledge of ALM. Moreover, the testimony of the parties supports the factual conclusion that Wilkins is sole owner of the cabin.
Wilkins built the cabin in 1988. He testified that he asked Lewellyan if he had any objections to him building a camp on the land, and Lewellyan had none. Nothing in Lewellyan's testimony disputes this claim. Accordingly, we find that Wilkins built the cabin with co-owner consent.
Wilkins testified that he built the cabin at his own expense and spent about $78,000 on construction and an additional $4,000 getting utilities to the site. Wilkins was involved in every phase of construction and was on the building site everyday. Both Wilkins and Lewellyan agreed that they met with another individual to select a building site that would not flood. However, Wilkins adamantly denied that he ever discussed granting Lewellyan or ALM an ownership interest in the cabin.
Wilkins testified that once the cabin was built, he gave keys to Lewellyan and others to use the cabin as they pleased. One individual with access to the cabin was Buddy Eikert. According to Wilkins, Eikert regularly used the cabin and paid two-thirds of the expenses associated with maintenance from 1989 through 1993. During this time, Lewellyan also used the cabin, but did not pay any of the expenses. Sometime in 1993, Eikert and Lewellyan had a falling out, so Eikert was no longer allowed on the land co-owned by ALM and Wilkins. Wilkins then began forwarding bills to Lewellyan with requests that he pay half of the expenses, such as insurance payments, utilities, and upkeep on the cabin. Thereafter, Wilkins and Lewellyan, through ALM, divided expenses associated with the cabin.
Lewellyan admitted that he paid no part of the costs associated with building the camp or establishing utility services. Nevertheless, he claims that Wilkins intended *1159 the camp to belong to both of them, despite the lack of any documentation showing an ownership interest on the part of either Lewellyan or ALM. Lewellyan used the camp and had a bedroom which he furnished. However, Lewellyan could not show that he contributed toward any expenses until 1993.
Lewellyan claimed that his ownership of the cabin derived from discussions wherein Wilkins mentioned giving him an additional forty acres due to his help in securing a case from which Wilkins made a substantial amount of money. Wilkins admitted discussing the possibility of giving Lewellyan an extra forty acres, possibly in the event of a partition, in gratitude for the case from which he profited. However, Wilkins denied that this possibility had anything to do with the cabin and testified that the discussion regarding the forty acres had not been mentioned in about fifteen years.
Lewellyan also bases his ownership claim on a $10,000 payment made by ALM to Wilkins in October 1996. However, nothing in the record relates this payment to the purchase of an ownership interest in the cabin. While Lewellyan testified that he believed the payment to be a settlement of all issues relating to cost and ownership of the cabin, the totality of the testimony indicates that the payment was to settle expenses associated with maintenance of the cabin and work done on the property.
Based on the evidence presented, we find no error in the trial court's recognition of Wilkins' separate ownership of the cabin. Wilkins built the cabin at his own expense and allowed others to use and enjoy it. In return, those using the cabin contributed to expenses associated with its maintenance. Neither the expenses paid by ALM since 1993 nor the payment of $10,000 establishes ownership of the cabin on the part of ALM or Lewellyan. This assignment of error by ALM is without merit.

Partition of the Property
Unless otherwise provided by law or a juridical act, no one may be compelled to hold a thing in indivision with another, and a co-owner has a right to demand partition of a thing held in indivision. La. C.C. art. 807; McNeal v. McNeal, 98-1586 (La.App. 3d Cir.3/31/99), 732 So.2d 663. The law generally favors partition in kind unless the property is indivisible by nature or cannot be conveniently divided. La. C.C.P. art. 4606; Devco Inc. v. Richey, 30,319 (La.App.2d Cir.2/25/98), 707 So.2d 161; Marsh Cattle Farms v. Vining, 30,156 (La.App.2d Cir.1/23/98), 707 So.2d 111, writ denied, 98-0478 (La.4/24/98), 717 So.2d 1167. Property cannot be conveniently divided when the division would result in a diminution of its value, or loss or inconvenience to one of the owners. Devco Inc. v. Richey, supra; Marsh Cattle Farms v. Vining, supra; Birdwell v. Jeffery, 486 So.2d 1094 (La.App. 2d Cir.1986). In kind division shall be decreed when "the thing held in indivision is susceptible to division into as many lots of nearly equal value as there are shares and the aggregate value of all lots is not significantly lower than the value of the property in the state of indivision." La. C.C. art. 810.
The party seeking partition by licitation bears the burden of proving that the property cannot be divided in kind. Marsh Cattle Farms v. Vining, supra; Birdwell v. Jeffery, supra. In addition, whether immovable property should be divided in kind or by licitation is a question of fact to be decided by the trial court. Marsh Cattle Farms v. Vining, supra; Loupe v. Bybee, 570 So.2d 31 (La.App. 3d Cir.1990), writ denied, 572 So.2d 94 (La. 1991).
*1160 ALM sought partition by licitation. Wilkins sought partition in kind. Accordingly, the burden was on ALM to prove that the property could not be partitioned in kind. To meet this burden, ALM presented testimony to show that the property could not be partitioned in kind due to differences in the western and eastern halves which would preclude division into lots of nearly equal value and would result in a diminution in value and inconvenience to the owners. Wilkins produced evidence to prove that the property could be divided into lots of nearly equal value. It is apparent from the reasons for judgment that the trial judge determined that the property could not be conveniently divided due to inadequate vehicular access and the location of utilities and the cabin on the west half of the property. We cannot say that the trial judge was clearly wrong or manifestly erroneous in making this factual determination.
The evidence establishes that there is one route of legal access to the property. This is by way of a logging road built by International Paper in 1970. Testimony established that parts of the road and some culverts have been washed out. Where the road forks, the road along the western fork is suitable for some vehicular travel, but the road along the eastern fork is not. A series of creeks flows through the east section of the property. Wilkins and others built a series of bridges along the eastern fork of the road; however, these bridges are only suitable for use by four-wheelers. Moreover, many of the bridges are in need of repair, and the road is practically impassable during times of heavy rainfall.
The divisions proposed by Wilkins at trial placed the entirety of the road leading to the fork in the western half of the property. As such, the owner of the western half would possibly be compelled to grant a right of passage to the owner of the eastern half as provided in La. C.C. art. 694. Furnishing a right of passage would not necessarily alleviate the inconvenience of access associated with an in kind division. In Hughes v. Heirs of Cain, 268 So.2d 149 (La.App. 1st Cir.1972), writ refused, 271 So.2d 259 (La.1973), the court found division in kind to be inconvenient where landowners would acquire remote areas inaccessible except by crossing another's property. The court concluded that the situation would result in economic loss, inconvenience, and legal difficulties. Also, in Doescher v. Powers, 447 So.2d 1171 (La.App. 3d Cir.1984), the court rejected an in kind division that would have required one owner to grant a right of way to the other owner. The court concluded that dividing the property so as to require a right of way would be an inconvenience to the owners that would prevent a partition in kind. The trial judge in the case sub judice concluded that it would not be feasible for the owners to use the same road due to problems that would certainly arise regarding routine maintenance and expenses. We agree.
Additionally, we find no error in the trial court's denial of Wilkins' motion to reopen and supplement the record with additional proposed divisions to address the access issue. This was a matter within the trial court's discretion, and we find no abuse of that discretion in this instance. Our review of the proffered evidence shows that the proposed divisions, would make the International Paper road the property line up to the fork. However, this would not alleviate the inconvenience that would result from the parties sharing the road, nor would it address the fact that the party receiving the west half of the property would have vehicular access, whereas the party receiving the east half would be largely limited to travel by way *1161 of four-wheelers on a road that has not been maintained.
In addition, utility lines are currently available only to the cabin located on the west half of the property. These were added by Wilkins when he built the cabin. Wilkins' separate ownership of the cabin is also a factor properly considered by the trial court in determining whether property cannot be conveniently divided. When property is divided in kind, lots of equal or nearly equal value are determined by experts and then drawn by chance by the co-owners. Neither the judge nor the experts can allocate a specific part to one of the owners. Tri-State Concrete Company v. Stephens, 406 So.2d 205 (La.1981), Marsh Cattle Farms, supra. Under this procedure, Wilkins, who was living in the cabin with his family at the time of trial, would not be ensured of receiving the lot on which his cabin is located. His rights would then have to be determined under the Louisiana Civil Code articles pertaining to accession as it relates to immovables. In Loupe v. Bybee, supra, a residence on the property to be divided was a factor in finding that the property was not subject to division in kind. As stated in Loupe v. Bybee, supra:
It is not necessary to produce proof of the indivisibility of property in kind in order that it might be partitioned by licitation where the record shows that the nature and condition of the property is such that it cannot be conveniently divided in kind. Kilbourne v. Hosea, 19 So.2d 279 (La.App. 1st Cir.1944).
Conflicting expert testimony was also presented to the trial court. ALM presented the testimony of Robert W. Lowe, Jr., who qualified as an expert real estate appraiser. Lowe's opinion was that the property could not be divided in kind or in equal value due to the presence of the utilities and cabin on the west half of the property and access issues, including the absence of legal access on the east side of the property and the condition of the International Paper road. Merlin Smith, who was the court appointed expert and who was hired by Wilkins to conduct a timber cruise, opined that the property could not be divided in kind without some diminution in value. Finally, Don Lockard, an expert real estate appraiser who testified on behalf of Wilkins, was of the opinion that the land could be divided into two parcels of nearly equal value. Lockard did not believe access and improvements to be factors that would significantly impact the market value of the property. It is within the trial court's broad discretion to determine the effect and weight of expert testimony. Williams v. City of Monroe, 27,065 (La.App.2d Cir.7/3/95), 658 So.2d 820, writ denied, 95-1998, 95-2017 (La.12/15/95), 664 So.2d 451, 452. By concluding that the property could not conveniently be divided in kind, the trial court obviously gave greater weight and effect to some of the expert testimony. This was within the trial court's discretion.
Considering the conflicting expert testimony and other evidence at trial, we can find no error in trial court's determination that the property cannot be partitioned in kind. As such, we affirm the trial court's judgment ordering partition by licitation.

Costs
Generally, the party cast in judgment is taxed with costs of the proceedings; however, the trial court may assess costs against the parties in any equitable manner, and its assessment will not be disturbed absent an abuse of discretion. La. C.C.P. art.1920; Cajun Elec. Power Coop. v. Owens-Corning Fiberglass Corp., 616 So.2d 645 (La.1993); Hunter v. Bossier Medical Center, 31,026 (La.App.2d Cir.9/25/98), 718 So.2d 636.
*1162 The trial court assessed all costs against Wilkins. While we recognize the trial court's discretion in doing so, we are compelled to find an abuse of discretion in this instance. Two issues, ownership of the cabin and partition of the property, were presented to the court for resolution at trial. Wilkins prevailed as to the ownership issue, whereas ALM obtained a judgment ordering that the property be partitioned by licitation. Both issues involved significant amounts of testimony and documentary evidence. Therefore, we do not find the assessment of all costs against Wilkins to be an equitable judgment. Accordingly, costs will be divided equally between the parties.

CONCLUSION
For the reasons discussed, the judgment of the trial court is affirmed except as to that part of the judgment assessing all costs against Wilkins. That portion of the judgment is hereby amended to divide costs equally between the parties. Costs associated with this appeal are also assessed equally between the parties.
AMENDED IN PART, and AFFIRMED AS AMENDED.