|,WILLIAMS, Judge.
The defendants[1] appeal a judgment in favor of the plaintiff, Entrada Company, L.L.C. (“Entrada”). The trial court found that Entrada owned a two-sevenths interest in the property with the remaining five-sevenths owned by defendants. The court ordered that the 125-acre tract of land be partitioned by licitation. For the following reasons, we affirm. ■
FACTS
In November 2001, Entrada filed a petition to partition by licitation a tract of land containing approximately 125 acres located in Lincoln Parish, Louisiana, described as follows:
The Westfé of the NE 1/4 and the NE 1/4 of the NE 1/4 of Section 24, Township 18 North, Range 4 West; and Lots 6,7,8,14 and 15 in the West 3/8 of the NE 1/4 of SE 1/4 of Section 24.
Attorney Gina Jones was appointed as curator to represent the unopened successions and absentee defendants,
In February 2002, Erik Jackson, who was acting pursuant to powers of attorney, filed on behalf of defendants an answer and exceptions of no causé of action, prematurity and non-joinder of an indispensable party. After a hearing, the trial court denied the defendants’ exceptions. At a pre-trial conference in December 2002, the court advised Erik Jackson that he would not be permitted to represent defendants. In May 2003, attorney |2Steven Sylvester was allowed to enroll as counsel for the defendants and the curator was relieved of her duties.
After a trial, the court issued written reasons for judgment finding that Entrada owned an undivided two-sevenths interest in the land and that the remainder was owned by the successions of Jackson, Giles, Younger, Rentz and Griffith and their heirs. The court stated that the land consisted of rolling hills with an uneven distribution of timber, that an electrical transmission line'extended from the northeast to the southwest across the property and that only a 40-acre tract in the northwest corner of the property was suitable for home building. Finding that the land could not be divided in kind without a diminution of value, the court rendered judgment ordering that the property be partitioned by licitation. Defendants appeal.
DISCUSSION
In two assignments of error, the defendants contend the trial court erred in determining the plaintiffs ownership interest in the land. Defendants argue that the evidence concerning the chain of title does not support a finding that plaintiff acquired a 35-acre interest in the property.
A court of appeal should not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880 (La.1993). The task of a reviewing court is to assess whether the fact finder’s resolution of a factual issue was reasonable in *663 light of the record as a whole. Fowler v. Wal-Mart Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.
In the present case, attorney Mike Toft was accepted as an expert in |3title examination of Louisiana immovable property. Toft testified that he reviewed the public records of Lincoln Parish, where the land is located, to determine the ownership of the property. Toft explained that plaintiffs predecessor in title, Mary Ellen Ben-net Lewis, had acquired a nine-acre interest in the land by deed from her father, Aaron Bennett. Later, as his only child, Lewis obtained the remainder of Bennett’s undivided interest in the land by judgment of possession rendered on August 12,1999, in the succession of Aaron Bennett. Lewis conveyed all of her interest to John and Alana Belton. Toft stated that the public records showed that in September 2001, plaintiff had acquired an undivided two-ninths interest in the property from the Beltons. Toft testified that he later learned of an affidavit of death and heir-ship indicating that Harlee Miller and Sadie Woodards had died without marrying or having children, and that their interests had passed to the other heirs. As a result, plaintiff owned a two-sevenths interest.
The plaintiff introduced into evidence the documents in the chain of title. Based upon this record, we cannot say the trial court erred in accepting Toft’s testimony based on the public records of the parish and in concluding that plaintiff owns an undivided two-sevenths interest in the property. The assignment of error lacks merit.
Defendants contend the trial court should not have reached a decision in this case prior to a ruling in the pending Arkansas probate proceeding which involved a purported will of Aaron Bennett. LSA-R.S. 9:5630 provides that an action to assert an interest in immovable property against a third party who has acquired an interest from an heir recognized in the | ¿judgment of possession, or his successors, prescribes two years from the date the judgment of possession becomes final.
Here, the record shows that a judgment of possession in the succession of Aaron Bennett was rendered in August 1999, recognizing Lewis as Bennett’s only child and granting to her all of his undivided interest in the subject land. In a sworn affidavit of death and heirship, Clifton Jackson, one of the defendants, stated that Aaron Bennett had died intestate. Lewis conveyed all of her undivided interest to the Beltons, from whom plaintiff acquired its undivided ownership interest.
Toft opined that the Arkansas proceeding could not affect the plaintiffs ownership interest in this land because more than two years had passed since the judgment of possession became final and under the statute, any action to challenge the ownership interest granted in the judgment of possession had prescribed. Defendants failed to show that the outcome of probate proceedings pending in another state would have any impact on the interests of the co-owners of this land. Thus, the trial court did not err in rendering judgment in this case. The assignment of error lacks merit.

Partition of Property

In the remaining three assignments of error, defendants contend the trial court erred in ordering partition by licitation. Defendants argue that the evidence did not support partition by licitation because plaintiff failed to satisfy its burden of proving that the property could not be divided in kind.
Unless otherwise provided by law or juridical act, no one may be compelled to hold a thing in indivisión with another and a co-owner has a bright to demand *664 partition of a thing held in indivision. LSA-C.C. art. 807; Ark-La-Miss Timber Co., Inc. v. Wilkins, 36,485 (La.App.2d Cir.12/11/02), 833 So.2d 1154. The law generally favors partition in kind unless the property is indivisible by nature or cannot be conveniently divided. LSA-C.C.P. art. 4606; Tri-State Concrete Co. v. Stephens, 406 So.2d 205 (La.1981). Property cannot be conveniently divided when the division would result in a diminution of its value, or loss or inconvenience to one of the owners. Tri-State Concrete v. Stephens, supra; Ark-La-Miss Timber v. Wilkins, supra.
LSA-C.C. art. 810 provides that the court shall order partition in kind when the thing held in indivisión is susceptible to division into as many lots of nearly equal value as there are shares and the aggregate value of all lots is not significantly lower than the value of the property in indivisión. When a thing held in indivisión is not susceptible to partition in kind, the court shall order partition by licitation or private sale with proceeds to be distributed to the co-owners in proportion to- their shares. LSA-C.C. art. 811.
The party seeking partition by licitation bears the burden of proving that the property cannot be divided in kind. Ark-La-Miss Timber, supra. Whether immovable property should be divided in kind or by licitation is a question of fact to be decided by the trial court. Marsh Cattle Farms v. Vining, 30,156 (La.App.2d Cir.1/23/98), 707 So.2d 111.
In the.present case, James Steele and Charles Smith were accepted, as experts in the valuation of undivided interests in real property. Steele, an owner of the plaintiff, Entrada, testified he had visited the property and | ^observed that some areas of the land held more timber than others and that a large power line extended diagonally across the center of the jointly-owned land with a right of way approximately 250 feet wide. Steele stated that he was unable to agree on a voluntary partition with the other co-owners. Steele testified that there was a public road along the southern end of the property, but that the northern part of the tract did not have public road access. Considering the land’s topography, lack of road access, uneven timber distribution and the utility right of way, Steele opined the property could not be divided in kind because the individual lots would not be of equal value.
Smith, a real estate investor, testified that he was hired by plaintiff to determine whether the co-owned land could be divided without diminished value. Smith stated he had visited, the property and observed that the topography is varied with a drop in elevation of 50 feet from the highest to the lowest point of the land. He testified that some portions of the tract would drain better than others and that the power line cut across approximately fifteen acres of the property. Smith stated that if the land was divided, the creek bed and the power line would reduce the value of the affected lots. Smith explained that a parcel in the south, with frontage on the public road, would be worth more than a lot without such road access. Smith testified that even assuming there was a road servitude, one parcel would benefit while another would be burdened and the cost of building the road would offset any increased value. Smith opined that dividing the land without a diminution in value would be “impossible,” because of the ^characteristics of the land such as the topography, scattered timber, the power line and limited road access.
James Wooten, defendants’ expert surveyor, testified that the tract of land contained 125.72 acres and that the utility right of way was 200 feet wide “running right through the property.” Wooten stated that he had prepared a survey plat dividing the tract into seven lots with each *665 containing 17.96 acres. He acknowledged that with this plan, road access for some of the lots would require a servitude across other lots and that road construction would be expensive. Wooten testified that he had drawn a proposed servitude on his plat running along the west and north boundaries of the tract to address the access issue. Wooten stated that without the suggested servitude, lots three through seven would not have access to a public road. Wooten testified that there was no timber on the utility right of way, so that a person with a lot affected by the power line would have less timber than other lots.
The plaintiff presented evidence to establish its undivided ownership interest in the land. In addition, plaintiff produced expert testimony demonstrating that the property could not be divided into lots of equal value due to certain characteristics of the land, such as the uneven distribution of timber, the significant utility right of way running through the center of the property and the inadequate vehicular access. Thus, plaintiff submitted evidence to satisfy its burden of proving that the land was not susceptible to partition in kind and that partition by licitation was necessary.
Although defendants produced a survey plat depicting a division of |sthe land into seven lots of equal acreage, defendants failed to rebut the testimony that the lots would not be of equal value. As drawn on the plat, lot three includes a long narrow corridor less than 300 feet wide that is of doubtful desirability or utility. Further, Wooten acknowledged that because of inadequate access to the property, the owners of some lots would be compelled to grant a right of passage servitude to owners of other lots. However, as this court pointed out in Ark-La-Miss Timber, supra, furnishing a right of passage would not necessarily alleviate the inconvenience of access associated with a partition in kind where, as here, some owners would acquire lots not readily accessible except by crossing another’s land, with the added expense of building and maintaining the road.
Defendants also argue that the trial court erred in ordering partition by licitation because plaintiff failed to present an appraisal of the land to determine the property value. The authority cited by defendants does not support their position that an appraisal of the property must be submitted into evidence before the court may order partition by licitation. Although plaintiffs experts did not refer to a specific monetary value of the property, both Steele and Smith testified that based on their observations of the land and their experience, the relative value of the lots would not be equal in a partition in kind. This conclusion was based on a number of factors, such as the variation in topography and timber across the tract, its limited amount of frontage on the public road and the utility right of way.
The trial court weighed the credibility of the expert witnesses and considered the evidence presented. Based upon this record, we cannot say |9the trial court was clearly wrong in finding that the plaintiff satisfied its burden of proving by a preponderance of evidence that the property could not be conveniently divided without a diminution of value or loss or inconvenience to one of the owners. Consequently, the trial court correctly ordered partition by licitation. The assignments of error lack merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is affirmed. Costs of this appeal are assessed to the defendants.
AFFIRMED.

. Named as defendants were Clifton Jackson, “John Doe” as a representative for any unknown owners of the jointly-owned property, the unopened successions of Nevada Jackson, Harlee Miller, Sadie Woodards, Pruella Giles, Callie Younger, Magnolia Rentz, Nicy Griffin and their absentee heirs, including Jennifer Jackson, Eunice Tillis, Paul Younger, Linda Carter, Michael Younger, Paula Younger, Atti-lá Martin, John Q. Younger, Claudie Mae San-tifer, Coydell Pleasant, Elnora Green, Jewella Rentz, Zambia Orocso, Karina Washabaush, Jewel Rentz, Clotil Shelby, Sinatra Griffin and Oscar Griffin and adjoining landowners allegedly without any interest in the property, Lance Jackson, Rosetta Bowden, Florese Hunt and LaRuth Wilson.