273 So.2d 848 (1973)
NATIONAL AMERICAN BANK OF NEW ORLEANS
v.
Murray F. CLEVELAND and Norma Monnin Hynes, Testamentary Executrix of the Succession of T. Milton Hynes.
No. 5163.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1973.
Rehearing Denied March 13, 1973.
Writ Refused May 7, 1973.
Clem H. Sehrt and Peter J. Butler, New Orleans, for plaintiff-appellee.
Henican, James & Cleveland, Carl W. Cleveland, New Orleans, for defendants-appellants.
Before SAMUEL, CHASEZ and LEMMON, JJ.
SAMUEL, Judge.
This suit for a partition by licitation was filed by the National American Bank against Murrary F. Cleveland and Norma Monnin Hynes in her capacity as testamentary executrix of the Succession of her husband, T. Milton Hynes. The property sought to be partitioned is owned in indivision by the three litigants, one-half by the plaintiff and one-quarter by each of the defendants. Since the institution of the action defendant Murray F. Cleveland has *849 departed this life and Carl W. Cleveland has been substituted as party defendant in his capacity as executor of Mr. Cleveland's succession. For purposes of this litigation both defendants have elected to combine their respective interests in order that the property may be divided in kind as if owned by two equal owners.
After trial on the merits, the lower court ordered the sale of the property at judicial auction and the proceeds distributed to the three owners in accordance with their respective interests. Defendants have appealed contending the property should be partitioned in kind rather than by licitation.
The property is a tract of land, approximately 175 acres in size, located in New Orleans East. It is generally rectangular in shape, bordered on the south by Chef Menteur Highway, on the east by Congress Inn and the Village de L'Est Subdivision, on the north by Lake Forest, Inc., and on the west by Paris Road. It has approximately 1,800 feet of frontage on Chef Menteur Highway by about one mile in depth between approximately equal and parallel lines.
The topography of the land is generally uniform, being "approximately 15 to 18 feet of humus which is underlaid by dense clay-sand". The entire tract is entirely unimproved. There is one outstanding feature which demarcates or divides the tract and that is a borrow pit containing water which runs east to west on a line parallel to and 500 feet north of Chef Menteur Highway.
North of the borrow pit the entire property is zoned single-family residential. It is conceded that the highest and best use for this section is subdivision and sale in the form of lots. South of the borrow pit the zoning is largely commercial, but partially single-family residential. However, that portion zoned residential, located at the corner of Chef Menteur Highway and Paris Road, is felt by the experts who testified to be zoned in a "holding classification" by the City in anticipation of expropriation and despite the fact that its highest and best use also is commercial.
It is the general rule of our jurisprudence that partitions in kind are favored over partitions by licitation. The burden of proof therefore is on the party seeking liquidation by judicial sale, here the plaintiff, to prove that "the property is indivisible by nature or cannot conveniently be divided." before he may obtain the relief he seeks. LSA-C.C.P. Art. 4606; Babineaux v. Babineaux, 237 La. 806, 112 So.2d 620; Welch v. Pitre, 216 La. 980, 45 So.2d 363.
From a physical standpoint the property appears suitable to division in kind. The question thus remains whether the property will suffer a diminution of its value as a whole by a division in kind or whether loss or inconvenience by one of the owners will result from such a division. LSA-C.C. Art. 1340. If neither is the case then judicial sale may not be ordered, because the property will be susceptible of "convenient" division as contemplated by LSA-C.C.P. Art. 4606. Each case stands on its own set of facts.
After our review of the record we see no reason why this particular piece of property cannot be equally divided on a 50-50 basis between plaintiff on the one hand and the defendants on the other.
The basis for plaintiff's contention that the property is insusceptible of division in kind is succinctly stated in the testimony of Mr. Thomas Dupree, qualified as a plaintiff expert in the field of appraising:
"As I stated in the report I believe it cannot be partitioned in kind without loss of value and/or substantial inconvenience to the owners for the following reasons, no final plans on I-410 are available so we cannot divide the property and be sure of equitable division and access. The development cost of the *850 property would be higher in two parcels as shown by Mr. Hunter's study and that covers the principal objections to it, that was in the summary."
As to Mr. Dupre's first contention, there is considerable testimony regarding the fact that, at some future time, it is likely that federal and state highway construction will be undertaken in the general area of the property. However, there is no absolute certainty as to where the roadways will be placed since at the time of trial no public hearings had been convened to consider the matter. We do not consider that the fact that an interstate highway may eventually be built on a portion of this property is such an obstacle as to prevent division of the tract in kind. If the land was divided and some portions later expropriated the owner thereof would be compensated for the actual value of the land and for such severance damages as might accrue as a result of the taking. We fail to see how this would occasion such loss or inconvenience to the owner whose property was expropriated as to justify partition by licitation.
In considering division of the property into parcels of equal value, plaintiff's experts were fearful of the uncertainty of the pending developments. Value is always a matter of judgment or speculation and pending but uncertain developments do affect present value. But here, while the circumstances do make conclusions as to value and as to division into tracts of equal value more difficult, it does not follow that either conclusion is impossible.
We likewise find the second contention, that development costs will escalate if the property is divided, to be unpersuasive. This contention is based on testimony given by Mr. David Hunter, qualified by plaintiff as an expert in the field of engineering, who stated that whoever first attempted to develop his section of the property, if the tract were divided, would bear greater costs for installation of sewerage and drainage facilities than would the owner who did not. This is because the Sewerage & Water Board requires developers to install facilities at their own expense and then donate the same to the governing body, whereupon the facilities become a public utility. Once the facilities become public property they may be used by the adjoining landowner without further capital outlay by him.
In a determination of whether property can be divided into parcels of equal value without adversely affecting the value of the whole, only present value is considered, and plaintiff has not shown that the greater proportionate cost which the first developer may incur in the future affects present value. Nor has it shown that the sum of the values of the divided parcels is less than the present value of the undivided tract. Nor has it been shown that one owner will suffer a present loss or inconvenience as a consequence of the division, especially since it is admitted that neither intends to develop the property at the present time.
Defendants, through Mr. Lennis X. Lamulle, qualified as an expert in the fields of realty and appraising, have suggested that in essence the following division of the property would be equitable:
"The commercial frontage on Chef Menteur Highway to be treated separately from the residential rear portion of the property because of the difference in the highest and best use of the two tracts, and also because of the physical division of the two tracts from each other by the borrow pit. In addition, a New Orleans Public Service servitude running from east to west across the subject tract generally along the northern shore of the borrow pit, and the borrow pit itself were included with the commercial property, and divided into two roughly equal tracts labeled `A' and `B'. The remaining residential portion of the property lying north of the northern edge of the New Orleans Public Service, Inc., servitude was divided into *851 two tracts labeled `1' and `2'. That division was made by dividing precisely in half the frontage on Paris Road from the northern edge of the New Orleans Public Service, Inc., servitude at its intersection with the western boundary of the subject tract to the northwestern corner of the subject tract. From that standpoint, a line is drawn in an east-to-west direction to divide the residential rear portion of the property into two tracts that would have equal acreage, as well as equal frontage on Paris Road."
Each owner is then allowed to choose a combination of either tracts 2 and B or tracts 1 and A. Each tract is felt to have some slight advantage or disadvantage and Mr. Lamulle felt that this division would work out a more even distribution for all concerned. However, despite Mr. Lamulle's suggested division defendants argue:
". . . the defendants repeatedly offered to permit the plaintiff seeking a partition by licitation to have a first choice from `A' or `B' and the first choice from `1' or `2', or to make any combination of letters and numbers that it desired, provided that the plaintiff took a portion of the residential property and a portion of the commercial property."
We are of the opinion that the plan suggested by defendants is basically a sound one. After having heard Mr. Lamulle's testimony, plaintiff introduced no rebuttal evidence tending to show that the proposed division was inequitable or unequal. It offered no testimony that the property would be diminished in value as a whole by that division. In his testimony Mr. Lamulle specifically addressed himself to this point and negated plaintiff's theory in the following language.
"Q. I mean the division into four parcels, would that diminish the value of the whole property?
A. No, in my opinion it might even enhance the value of the property because usually, give or take a little bit, a smaller tract lends itself to easier marketability because of the amount of money involved and the expense involved in developing. Now, it certainly goes without saying that it would beif you developed the whole tract you might be able to save a few dollars here and there, but I would like to make the observation that in most large tracts the development of the property is in phases so that this indicates the best way to develop a large tract is in phases and as one is developed and sold you follow through with the next portion of the property."
We find Mr. Lamulle's testimony persuasive in this regard.
We also note that all expert witnesses, whether testifying for plaintiff or defendants, agreed on one point. They all felt that judicial sale was the worst possible means by which to effect a partition of the property. Mr. Lamulle expressed himself as follows on that point:
"Q. Do you feel that there is a substantial risk that whatever the value of this property that it would sell for substantially less than that value at auction?
A. Well, I think because of the size of the tract that this is a distinct possibility, that it would sell not for less than its value butor, rather, less, it would sell for less than could possibly be obtained on the open market."
It also appears clear to us that at a judicial sale defendants would be unable to protect their interests, being individuals of limited means. Plaintiff on the other hand has almost unlimited resources and can protect itself by purchase of defendants' interest if other bidders do not offer what the plaintiff considers a fair price.
This is a valuable piece of unimproved real estate. Plaintiff acquired its one-half *852 interest for $1,200,000. Although it has offered to purchase another one-quarter interest from one of the co-owners, that offer was only $275,000, proportionately far less than was paid for its present interest. Expert testimony is to the effect that "development of this property is ten years away ... a prudent buyer would not anticipate that he'd get the full return from it unless he held it for ten years."
Accordingly, we are of the opinion that plaintiff has not borne the burden of proving a partition by licitation is necessary.
For the reasons assigned, the judgment appealed from is set aside and annulled and this matter is remanded to the trial court for the purpose of rendering a judgment ordering the property partitioned in kind in accordance with the plan of defendants' expert witnesses and for such further proceedings as thereafter may properly come before the court; all costs in both courts to be paid by the plaintiff-appellee.
Set aside, annulled and remanded.