406 So.2d 205 (1981)
TRI-STATE CONCRETE COMPANY, INC.
v.
Ethel Reed STEPHENS.
No. 81-C-1091.
Supreme Court of Louisiana.
November 16, 1981.
Rehearing Denied December 14, 1981.
*206 Samuel T. Singer, Winnsboro, for defendant-applicant.
John B. Benton, Jr. of Kitchens, Benton, Kitchens & Pearce, Minden, for plaintiff-respondent.
MARCUS, Justice.
Tri-State Concrete Company, Inc., as an owner of an undivided 5/6 interest in a 360-acre tract of land and an undivided 4/5 interest in a 40-acre tract of land, instituted this action against Ethel Reed Stephens, the owner of the remaining undivided interests in said tracts, seeking a partition by licitation. The 360-acre tract of land is located in Webster Parish while *207 the 40-acre tract of land is located in Bienville Parish.
Mrs. Stephens acquired her interest in the two tracts by inheritance from her father, Robert A. Reed. Mr. Reed never lived on either of these two tracts; rather, the property was used for investment purposes. Mr. Reed raised cattle on the land; he had pecan orchards from which he sold pecans; he had oil wells from which he received royalties; and he sold timber and gravel from the property. Since Mr. Reed's death, his heirs have continued to receive royalties from producing oil wells located on the Webster Parish property. In November of 1979, Betty Reed Armor, one of the heirs, circulated a letter to her co-heirs concerning the possibility of selling the property. Each of the heirs, including Mrs. Stephens, signed this letter indicating that they would be willing to sell for a fair price. An invitation for sealed bids was sent to 40 or 50 people asking for bids on the 400 acres as a package. Included in this number were Mrs. Stephens' son and son-in-law. Two bids were received: one from Tri-State for $250,000 and one from Jack D. Tharpe Builders for $150,000. The property had previously been appraised at $450 per acre; the Tri-State bid represented a price of $625 per acre. After the bids were opened, Mrs. Stephens' son and son-in-law offered $251,000 for the property. Mrs. Armor testified that this offer was rejected because it was not submitted with the other bids. Tri-State purchased its interests from Mrs. Stephens' brothers and sisters on January 30, 1980. Mrs. Stephens refused to sell her interest in the property.
In its position, Tri-State alleged that it no longer desired to remain as an owner in indivision of the two tracts of land and that the property could not be economically divided in kind. Mrs. Stephens answered asserting that the properties were readily susceptible of being partitioned in kind without diminution in value and without loss or inconvenience to any of its owners. The trial judge, finding that the properties could not be divided in kind without loss or inconvenience to the owners, ordered the properties partitioned by licitation. Mrs. Stephens appealed. The court of appeal affirmed, finding that a division in kind of the properties would reduce their value. However, the court amended the judgment of the trial court to set a minimum price of $243,000 at the public sale for the 360-acre tract provided, however, that if the property did not bring the minimum price at the first public sale, it should again be offered at public sale without a minimum price. The court did not set a minimum price for the public sale of the 40-acre tract.[1] On Mrs. Stephens' application, we granted certiorari to review the correctness of that decision.[2]
The sole issue presented for our determination is whether the properties are susceptible of being partitioned in kind.
No one can be compelled to hold property with another; a division of a thing held in common may be demanded by the action of partition. La.Civ.Code arts. 1289 and 1308. The general rule is that partition in kind is favored over partition by licitation. Unless the property is indivisible by nature or cannot conveniently be divided, the court shall order the partition to be made in kind. La.Civ.Code art. 1339; La. Code Civ.P. art. 4606. Property cannot be conveniently divided when a diminution of its value, or loss or inconvenience of one of the owners, would be the consequence of dividing it. La.Civ.Code art. 1340. The burden of proof is on the party seeking partition by licitation to prove that the property cannot be divided in kind. Babineaux v. Babineaux, 237 La. 806, 112 So.2d 620 (1959); National American Bank of New Orleans v. Cleveland, 273 So.2d 848 (La.App. 4th Cir.), writ refused, 276 So.2d 701 (La.1973).
In order to effect a partition in kind, the property must be divided into lots of equal or nearly equal value. It is the function of experts to form the lots which *208 thereafter must be drawn by chance, and not selected, by the co-owners. It is not within the power or province of the judge or the experts to suggest that a certain part or parts of the property be set apart or allocated to one of the co-owners. There must be as many lots as there are shares or roots involved. Pryor v. Desha, 204 La. 575, 15 So.2d 891 (1943); Raceland Bank & Trust Co. v. Toups, 173 La. 742, 138 So. 652 (1931). See La.Civ.Code arts. 1364 and 1367.
In the instant case, Mrs. Stephens owns an undivided 1/6 interest in the Webster Parish property and Tri-State owns an undivided 5/6 interest. In order to be divided in kind, there must be six lots formed, one to be drawn by Mrs. Stephens and five by Tri-State. With respect to the Bienville Parish property, Mrs. Stevens owns an undivided 1/5 interest and Tri-State owns an undivided 4/5 interest. Thus, there must be five lots formed, one to be drawn by Mrs. Stephens and four by Tri-State.

THE 360-ACRE TRACT
The 360-acre tract of land in Webster Parish is irregular in shape. It has 1,980 feet of frontage on a public road along part of its easterly side. There is adequate drainage for the tract except the extreme north section and the southwest 40 acres. The general topography is rolling terrain. Eighty percent of the property is wooded; the remaining twenty percent is cleared pastureland. The wooded portion of the property ranges from good timber, in some areas, to cutover timber. The pastureland, estimated at about 50-60 acres, is located primarily in the north and north central sections of the tract. Mineral rights are not at issue in this partition suit. There are, however, several producing oil wells on the tract and a number of right-of-ways encumbering it.
Considering the variation in topography from one area of the tract to another and the location of the oil wells and various right-of-ways, we conclude that it would be difficult, if not impossible, to divide the property into six tracts of equal value. While the sample plan submitted by Mrs. Stephens' experts divided the property into six tracts of 60 acres each, the evidence does not show that the tracts are of equal value. It was conceded that a detailed survey taking into account the physical characteristics of the property would have to be made before a final plan could be drawn. The sample plan divided the property into six irregular and unusual tracts due to the irregular shape of the property and its limited amount of frontage on the public road. Several of the tracts consisted of a small frontage on the public road with long narrow corridors rendering them of doubtful desirability or utility. It further appears that one tract was mainly valuable pineland; one tract was less valuable pastureland; and at least one tract was burdened with an oil well and subject to ingress and egress of the oil producers.
Even assuming that a division into six equal tracts is possible, Tri-State argues that such division would result in a diminution of value and/or loss or inconvenience to the owners. The record contains conflicting evidence as to whether or not a division in kind would result in a reduction in value of the land. We need not rest our decision on this issue since we find that a division in kind would result in loss or inconvenience to Tri-State.
If the property is partitioned in kind, it is highly unlikely that Tri-State will receive a contiguous tract of land. The odds are against it. Still, the lack of contiguity does not per se create inconvenience to the owner. Each case must be examined in light of its own peculiar facts. In the instant case, the record reflects that Tri-State purchased the land for the purpose of mining it for sand and gravel. Tri-State's expert testified that the highest and best use of the property is for mining sand and gravel. Mrs. Stephens' experts testified that the highest and best use of the property "would be for a continuation of present and previous uses, including agriculture and sand and gravel production." Sand and gravel operations have been conducted on three sides of the property as well as on the property *209 itself. Due to the nature of the operations and the use of heavy off-road vehicles, sand and gravel operations require the use of a large tract of land. Considering the nature of the land, the variation in topography from one area to another, the location of the oil wells and various right-of-ways, and the highly irregular shaped tracts which would result from a division in kind, we find that Tri-State would be inconvenienced by a division in kind.
In sum, we conclude that it would be difficult, if not impossible, to divide the property into six tracts of equal value and, even if it could be so divided, we do not consider that it could be accomplished without loss or inconvenience to Tri-State. Accordingly, the court of appeal was correct in affirming the judgment of the trial court ordering partition by licitation.

THE 40-ACRE TRACT
The 40-acre tract of land in Bienville Parish appears to be land-locked with no direct road frontage. There is a railroad right-of-way across the southwest corner of the property. The property consists of 10 acres of pineland and 29 acres of cutover hardwood.
The highest and best use of the property is agriculture or, more particularly, growing timber. Tri-State's expert, a forester, testified that the property could not be divided into five parts of equal value. His opinion was based on the fact that the pineland, which is more valuable than the hardwood land, was not evenly distributed through the property. Even Mrs. Stephens' expert testified that if the timber were concentrated in one area of the tract, it would be difficult to divide the tract into five parts of equal value. Under the circumstances, we find that Tri-State has proved by a preponderance of the evidence that the property is not capable of being divided into five tracts of equal value and utility. Hence, the court of appeal was correct in affirming the judgment of the trial court ordering partition by licitation.
Mrs. Stephens further contends that the unequal bidding power of the parties should be considered as a factor in determining the type of partition. We do not agree. The court has discretion to direct the manner and conditions of effecting the partition so that it will be most advantageous and convenient to the parties. La. Civ.Code art. 1336; La.Code Civ.P. art. 4605. Hence, the court of appeal properly resolved the unequal bidding power of the owners in this case by directing the manner and conditions of effecting the partition, that is, setting a minimum price that the 360-acre tract must bring at the public sale, provided, however, that if the property did not sell for the minimum price, it should again be offered at public sale without a minimum price. Considering that there would likely be sufficient competitive bidding to protect each of the owners in the case of the 40-acre tract, the court of appeal found no compelling reason to set a minimum price for the sale of this property. We agree.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
LEMMON, J., concurs.
DIXON, C. J., dissents.
DENNIS, J., dissents believing that there was no proof of indivisibility by nature or that partition in kind would result in diminution in value.
NOTES
[1] 395 So.2d 894 (La.App. 2d Cir. 1981).
[2] 401 So.2d 355 (La.1981).