I,DREW, J.
Several heirs appeal a judgment ordering a partition in kind of immovable property in their parents’ succession. We affirm.

FACTS

Ona Eppinette and Jesse Eppinette were married on September 28, 1935. Five children were born during their marriage: Bobbie Eppinette Laverty, Charles Eppinette, Jesse Eppinette Vinet, Mary Eppinette Hall and Jimmie Eppinette Un-derhill. Mrs. Eppinette had one child, Charlene Toney, prior to the marriage. Mr. Eppinette had one child, Lorine Harris, prior to the marriage.
Ona Eppinette died on March 19, 1996. After her death, Jesse Eppinette continued living in the family home on two acres of land in Richland Parish. When a relative was no longer able to care for Jesse Eppi-nette during the evening, his daughter Jimmie Underhill began staying with her father during the night. Ms. Underhill lived in Swartz and worked in Monroe at the time. She stayed in her parents’ home for a little over a month before moving her mobile home onto her parents’ property in May of 1997. Ms. Underhill testified that she did this with her father’s permission. Charles Eppinette testified that he had no objections to Ms. Underhill doing this, although he claimed that she was going to place the trailer beside their parents’ house. According to Charles Eppinette, Ms. Underhill moved the mobile home to a location that was 25 feet from the house and no more than 20 feet from a barn on adjacent property owned by him. Charles Eppinette acquired this property, totaling about 41 acres, through a 1983 credit deed from his father.
pMr. Eppinette was placed in a nursing home approximately eight months after Ms. Underhill moved her mobile home onto the property; he died on May 6, 1998. All of the Eppinettes’ children survived them. The Eppinettes’ succession consisted of two acres of land in Richland Parish, a home on this land, and furniture and fixtures located in the home or in the possession of some of the heirs.

PROCEDURAL HISTORY

On May 3, 1999, Ms. Underhill filed a petition for possession in the succession of her parents in which she sought a partition of the two acres owned by her parents. She requested the issuance of a rule ordering her siblings to show cause why a notary should not be appointed to make a partition/appraisal of her parents’ property and why her share should not include the portion on which her mobile home was located.
Charles Eppinette, Charlene Toney and Bobbie Laverty filed an answer and a rule to show cause on May 17, 1999. They sought, among other things, to have Ms. Underhill’s mobile home removed from their parents’ property, and the appointment of a surveyor so that the immovable property could be apportioned by lots. The parties ultimately agreed on the appointment of a surveyor, Frank Messinger, and the sale of movables belonging to the succession.
Trial was held in this matter on September 10, 2001. The trial court provided reasons for judgment on January 4, 2002. The trial court stated it desired a partition in kind. The trial court noted that Mes-singer had divided the property into six tracts because the original intent was for the heirs to ^remain co-owners of the *1291 home, which the trial court believed was no longer possible in light of the poor relationships between some of the heirs. Messinger was ordered to redraw the plat to reflect five tracts. Tract 1 was to represent the tract on which Ms. Underhill’s mobile home was located. The tract adjacent to Charles Eppinette’s property was to be designated as Tract 2.
A judgment was rendered on February 6, 2002. A partition in kind was awarded, with Ms. Underhill receiving the tract (# 1) on which her mobile home was located. Charles Eppinette was awarded the tract (# 2) adjacent to his property. Tracts 3, 4, and 5 were to be divided by chance among the three remaining heirs.[1] In accordance with the reasons for judgment, if Charles Eppinette declined Tract 2, then Tracts 2, 3, 4, and 5 were to be divided by chance among Charles Eppi-nette and the three remaining heirs.
Charles Eppinette filed a motion for new trial on February 11, 2002. He requested that the trial court order Ms. Underhill to rotate her mobile home so that his tract would be similar to the shapes of the other tracts. The motion for new trial was denied.

DISCUSSION

The trial court has discretion to direct the manner and conditions of effecting the partition so that it will be most advantageous and convenient to |4the general interest of the co-heirs. La. C.C. art. 1336. See also, Tri-State Concrete Co., Inc. v. Stephens, 406 So.2d 205 (La.1981).
La. C.C.P. art. 3461 states, “The petition for the partition of a succession shall be filed in the succession proceeding, as provided in Article 81(2). In all other respects and except when manifestly inapplicable, the procedure for partitioning a succession is governed by the provisions of Articles 4601 through 4614.” La. C.C.P. art. 4606 provides, “Except as otherwise provided by law, or unless the property is indivisible by nature or cannot conveniently be divided, the court shall order the partition to be made in kind.”

Partition in kind

Appellants argue in their first assignment of error that the trial court erred in its division of the succession property. The two-acre parcel at issue has a southern boundary of 210’ along the northern right-of-way line of U.S. Highway 80. A western boundary of 420’ is just west of Eppinette Road. The northern boundary (210’) and the eastern boundary (420’) are both adjacent to 41 acres of property owned by Charles Eppinette. As per orders of the trial court, Messinger revised the preliminary plat to reflect five tracts of 0.4036 acres each. Four of the tracts have roughly rectangular shapes and frontage along Eppinette Road of between 90.32’ and 97.6’. The tract awarded to Charles Eppinette, Tract 6, is shaped like an upside-down “L.” It is the only tract adjacent to his property (which is to the north and east of the disputed parcel), and its frontage along Eppinette Road is 36.87’. .
| ¡^Appellants complain that Ms. Underhill should be ordered to rotate her mobile home so that the property can be divided into five tracts of equal shape and frontage along Eppinette Road. Messinger agreed at trial that if the mobile home was turned so that it was no longer parallel to Eppi-nette Road, then each tract could have equal footage along that road.
*1292 As noted by the trial court in its reasons for judgment, Ms. Underhill incurred “considerable expense” in moving her mobile home onto the succession property. The land needed to be cleared and soil added to raise the elevation. A septic system, water meter and butane tank were installed, and the home was hooked up to the electric utility wires. It cost Ms. Underhill approximately $11,000 to move her mobile home to that location. Although her mobile home has wheels on it, Ms. Underhill would still incur additional expenses if forced to turn her mobile home. She guessed that it would cost $800 to do so. She would have to remove and then reconnect her mobile home to various utility systems, and she would have to remove and rebuild her patio and fence.
Upon our review of this record, we cannot conclude that the trial court abused its discretion in ordering the property to be partitioned in accord with Messinger’s revised plat.

Southern Boundary

Appellants complain in their second assignment of error that the trial court erred in accepting an incorrect survey. Appellants argue that the plats prepared by Messinger have the fence line of the property, and not the northern right-of-way, as the point of origin. Appellants add that if the | spoint of origin reflected in the 1983 credit deed is the northern right-of-way line, then Underhill’s mobile home is on Charles Eppinette’s property. Appellants fail to direct this court to any evidence in the record supporting this assertion, We note that Messinger testified that he began the property survey from the northern right-of-way line of Highway 80 after surveying the entire Section 8 to determine the location of that line.
Appellants further argue that Messinger has some concerns about the point of origin of the tract. Messinger wrote a letter to the court, dated February 6, 2002, in which he stated:
There is also some concern as to the point of beginning of this tract. The deed calls for this tract to begin at the northern right-of-way of Highway No. 80. Other tracts, not this one, begin at the centerline of Highway No. 80. If this could be addressed now, it might eliminate additional hard feelings.
We first note that this letter has the same date as the revised plat, so Messing-er was obviously aware of this issue when he presented the trial court with the revised plat dividing the property into five tracts as ordered by the court. This issue was also raised at the September 2001 trial during appellant counsel’s cross-examination of Messinger:
Q: Your — just one other quick — your survey here is in direct conformity with the legal description as set forth in the deed that was filed in the record, is that correct?
A: Yes, sir.
Q: And the property line, the south part of the line begins — it does not begin in the middle of Highway 80, does it?
A: No, sir, there’s some confusion as to that. I believe Mr. Eppinette referred to or thought that it should start in the middle of the highway, there’s a few deeds that did, but this particular less and except did not that (sic) covers this particular tract.
17Finally, this issue was again raised at the hearing on the motion for new trial.
Messinger acted reasonably in relying upon the language in the 1983 credit deed *1293 to determine the parcel’s point of beginning. The accuracy of the 1983 deed is not before this court. Accordingly, the trial court did not err in accepting the plat as drawn by Messinger, notwithstanding the surveyor’s perplexing transmittal letter.

DECREE

At appellants’ costs, the judgment is AFFIRMED,

. Charlene Toney testified at trial that she was renouncing her interest in the succession. Lorine Harris has also apparently renounced her interest in the succession, but there is no statement of such in the record. The trial court ordered the attorneys to complete the recognition of the renunciations.