DREW, J.
1 tDefendants,- the .Unopened Succession of Foster Fuller Washington, et al., appeal from a judgment of the 42nd Judicial District Court, DeSoto Parish, the Hon. Robert Burgess presiding, ordering the .partition by licitation of immovable property. We affirm.
The property in question, co-owned by plaintiff and defendants, ‘ consists cjf approximately 192 acres of rural, undeveloped land south of Mansfield, Louisiana. The property is what remains of a 280-acre tract originally acquired by Phil Pe-gues in 1903. Over the years, parts of the original tract were conveyed to others or expropriated for public uses. Presently, the tract is owned in indivisión by at least 87 different owners.
The owner with the largest share of the property is the plaintiff, Lazarus Trading Company, which owns approximately 28%[1] of the land. Lazarus is not owned or controlled by Mr. Pegues’ heirs. The various Pegues heirs own the remaining 72%. A number of the Pegues hems have ownership interests that are less' than 1% of the total.[2]
In October 2012, Lazarus filed a petition in the district court asking the court to partition the property by licitation. Lazarus alleged that the property could not be partitioned in kind because the total value *991 of the lots created by such a partition would be less than the value of the tract as a whole.
Resolution of issues surrounding the identity, status and representation of the defendants delayed the trial until August 2015. At trial, the judge had to consider the competing opinions of experts concerning ^whether this unusual property should be partitioned in kind or by licitation. As an aid to the reader, we have attached as an appendix to this opinion a scale drawing of the property prepared by one of the witnesses, Sam Soule, that roughly depicts the property’s boundaries and the various manmade' surface features thereon. Former U.S. Highway 171 and a parallel active KCS railroad track divide the property approximately in half. The property is also divided by the current U.S. Highway 171. An older road, perhaps once a parish road, is on the east side of the property.[3] Finally, a substantial tract near the center of the property, where old and new Highway 171 and the railroad tracks meet, is owned by third persons and not by any of the litigants.
The parties apparently agreed that if the property were to be divided in kind, the partition could be accomplished by dividing the land into 25 lots, of which Lazarus would take 7 (7/25, or 28%) and the defendants would take the remaining 18 (18/25, or 72%).
The plaintiff first called one' of the defendants’ experts, Normand Roy, a professional appraiser. Roy had visited the property, was present when photos were taken,[4] and had rendered an opinion prior to trial that the property could be divided into parcels of 53 acres (28%) and 139 acres (72%) without diminishing the value of the property.
Roy testified:
• He is an experienced land appraiser.
• The four photos taken during his visit to the property show the existing access points from the roads on the property and the railroad crossing on the property..
h* He .believed that the four photos were taken on the subject property.
• He was not asked to do an appraisal; he was asked to survey the property to determine whether it was divisible and could be, divided into pieces of property with equal value.
• The property “could possibly” be divided into 25 lots of equal value, with some properties requiring rights of ingress/egress over other properties with direct access to the roads.
• In the absence of a survey showing . an actual ■ division of the property into 25 lots, he could not say whether all of the lots could have road frontage or access to a road across the railroad tracks.
• Division of the property into 25 lots was beyond his expertise as an appraiser.
• Generally speaking, division of a larger tract into smaller tracts increases the price per acre of the property because there is a higher demand for smaller properties.
The next witness for the plaintiff was Sam Soule, the forester who prepared the drawing of the property. Mr. Soule testified:
• The photos that Mr. Roy relied upon were not taken on the subject prop *992 erty but rather on property to its south.
• The railroad crossing depicted in these photos is 1,000 feet south of the property.
• There are no existing railroad crossings on the property.
• The “woods road” on the map is passable only on a “four-wheeler, Rhino, Mule;” a truck would be able to traverse only a part of the road, and in bad weather, the road was not usable at all.
• The property currently had limited road access, and there were some significant elevation differences between the property and the existing roads.
• The trees presently on the property were not merchantable timber, and “heavy clearing” would be necessary to convert them to merchantable pine.
• The land could not be divided into 25 lots of equal value because the area east of the railroad tracks had no access.
it* Getting access to the existing roads would be possible but would require “a lot of construction” and permits.
• From a forestry perspective, dividing the property into smaller lots would make a timber crop “practically unmarketable” because “individual lots would not support a logging operation economically.”
Real estate appraiser Robert Powell was the plaintiffs next witness. Mr. Powell testified:
• He had visited the property several times and was familiar with it.
• The photos relied on by Mr. Roy were not taken on the property.
• There is no railroad crossing on the property.
• There are only three points of access to the property from current U.S. Highway 171.
• There might be “a couple” of points of access from old U.S. Highway 171.
• He appraised the entire tract of land at $380,000.
• Some parts of the property were more valuable than others.
• The railroad track significantly decreases the value of the property.
• There was no way to divide the property into 25 or more lots of equal value because it has “the most hodgepodge assortment of railroad tracks, old roads, new roads and limited access. It’s just a hodgepodge, which makes it extremely difficult to divide it equally in any way.”
• The road on the east side of the property was not a “normal all-weather road,” but if it were, it could be used to access the property to the east of the railroad tracks.
• In order to determine whether division of the property into 25 lots would cause the overall value to increase or decrease, he would have to look at a plan for the division, but:
“I don’t think you can [divide] this into multiple tracts. You’ve got— you’ve got four-lane highways. You’ve got local roads. You’ve got railroad. You’ve got what we call external obsolescence. The railroad track kills that property. That railroad track is no different than a junk yard, or airport runways, or anything else. When that |fihorn comes down and you’re asleep at night. Anybody that has property on that railroad track, that would be external obsolescence.
“This property is as unusual as any I’ve looked at because of all the wild- *993 cards you have in it. And you can’t divide it into 25 equal parts without somebody getting the short end of the stick. It’s just—with that railroad track, limited access—you just cannot do it.”
• Even if the road on the east side of the property were accessible, it would still not be possible to divide the property into 25 lots of equal value.
At this point, the plaintiff rested its case. The defendants’ first witness was one of the Pegues heirs, Ms. Ruth Pegues. She testified that she was born and raised on the subject property. She further testified:
• The four photos relied upon by Mr. Roy were taken on the family property, and the railroad crossing was on their property.
• The road on the east side of the property “can be used but it’s hard to be used because it has holes in it and everything!.]” “You can’t go in a car. I’ve gone in a truck, but you can’t go in a car. It’s not in that good of condition.”
• All the Pegues heirs had authorized her to speak for them and they all wanted to' take their part of the property together as one.
The defendants called Mr. Roy on direct as a witness. ■ Roy -described the property as undeveloped woodlands and testified that it contained no houses or buildings. He also testified:
• The property could be accessed from anywhere off the public roads.
• The roads and the railroad effectively divided the property into four parcels.
• These four parcels should be appraised separately based upon their unique attributes.
• In order for a 25-lot division to be appraised, a plan would have to be put forward to divide the lots, but no one had come up with such a plan.
• A division of the property into a 7/25 portion and an 18/25 portion would increase the property value.
h* In the absence of an actual plan to divide the property into lots of equal value, assigning any given tract a value would be “too much of a hypothetical.”
• “As I said' earlier this morning, I’ve been doing it 40 years or more and this is about [as] unique a situation as I have ever seen.”
• Dividing the property into 7.68-acre parcels would “almost [in]variably” increase the value of the property.
• The best use of the property “would be for the entire family to form an LLC and go in and do a complete stripping of the property of their portion and putting it under rotation- • al crops like timber.”
After trial concluded, the parties filed post-trial briefs. The plaintiffs brief characterized the defendants’ request to hold their portion of the land in indivisión as an affirmative defense that the defendants had the burden of proving. Plaintiff argued that Ms. Pegues’ testimony alone was insufficient to prove that all the heirs actually wanted to remain co-owners in indivi-sión and, further, that such a division of the property was not in accordance with law. Plaintiff urged that if the court was convinced that the defendants had proved their defense, the court should order division of the property into 25 lots. However, if the court was not so convinced, the property should be divided into a number of lots based upon the lowest common *994 denominator of ownership.[5] Further, Lazarus pointed out that the different portions of the property have clearly different values, with some portions requiring a substantial expenditure of money to be useful. Lazarus noted also that the railroad tracks significantly decrease the value of the nearby property and impede access to the eastern part of the property, which presently is accessible only by the rough remains of a, former parish road. Finally, |7Lazarus argued that the court should not accept Mr. Roy’s contention that 25 equally valued lots could be carved out of this property because no specific division had been proposed for evaluation, and Mr. Roy admitted that he could not value the lots until a proposed division of the property had been submitted.
On October 2, 2015, the trial judge issued reasons for judgment, stating:
The overwhelming evidence proves that the best use of the property is for timber growth and forestry, which can in no way be conducted with a division in kind. This Court adopts as its further reasons for judgment the memoranda for Plaintiff.
The judge signed a judgment in accordance with these reasons on October 29, 2015, and the defendants took a timely suspensive appeal.
On appeal, the defendants argue that the trial court erred in concluding that the property could pot be partitioned in kind. The defendants assert:
• U.S. Highway 171 as well as old U.S. Highway 171 and a parish road run through the- property, providing access to all portions of the property.
• The presence of a major highway on the property does not prevent its partition in kind.
• The property is undeveloped forest land devoid of houses or other buildings.
• The partition of the property into 25 lots would not greatly diminish its value, and the plaintiff failed to prove that partition of the property in kind would diminish the value because the plaintiffs experts did not know the effect that such a partition would have on the value.
DISCUSSION
No one may be compelled to hold a thing in indivisión with another unless the contrary has been provided by law or juridical act, and any co-owner has a right to demand partition of a thing held in indivi-sión. La. C.C. art. 807. La. C.C. art. 810 provides:
|sThe court shall decree partition in kind when the thing held in indivisión is susceptible to division into as many lots of nearly equal value as there are shares and the aggregate value of all lots is not significantly lower than the value of the property in the state of indivisión.
La. C.C. art. 811 provides:
When the thing held in indivisión is not susceptible to partition in kind, the court shall decree a partition by licitation or by private sale and the proceeds shall be distributed to the-co-owners in proportion to their shares.[6]
*995 As this writer explained in Mitchell v. Cooper, 48,125 (La.App.2d Cir.7/24/13), 121 So.3d 736:
The burden of proof is on the party-seeking partition by licitation to prove that the property cannot be divided in kind. Tri-State Concrete Co. v. Stephens, 406 So.2d 205 (La.1981).
The general rule is that partition in kind is favored over partition by licitation. Tri-State Concrete, supra. Except as otherwise provided by law, or unless the property is indivisible by nature or cannot conveniently be divided, the court shall order the partition to be made in kind. La. C.C.P. art. 4606.
Property cannot be conveniently divided when the division would result in a diminution of its value, or loss or inconvenience to one of the owners. Entrada Co. v. Unopened Succession, 38,800 (La. App.2d Cir.9/22/04), 882 So.2d 661.
The decision of whether land should be divided in kind or by licitation is a question of fact to be decided by the trial court. Green v. Small, 227 La. 401, 79 So.2d 497 (La.1955).
A trial court’s factual findings will not be upset unless they are manifestly erroneous or clearly wrong. Brewer v. J.B. Hunt Transport, Inc., 2009-1408 (La.3/16/10), 35 So.3d 230. As this court stated in Cahill v. 9Kerins, 34,522 (La. App.2d Cir.4/4/01), 784 So.2d 685 (and cases cited therein):
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Under the manifest error standard, the linchpin is whether the trial court’s findings are reasonable; in other words, if there is a reasonable factual basis for the trial court’s finding, even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court’s findings cannot be rer versed. -
The record in this case fully supports the trial court’s conclusion that the plaintiff proved that the property simply cannot, as a practical matter, be divided in kind. The plat of this unimproved land is a patchwork quilt of boundaries with the center carved out, and the problem of dividing the land into at least 25 lots of roughly equal value[7] is rendered insoluble by the layout of the roads and the railroad track. The question of whether the railroad track had either no crossings or one crossing on the property was not answered definitively at trial. However, either way, access to most of the eastern part of the property was largely cut off by that track. Any crossings built on a lot in the future would be expensive to build—reducing the value of the lots they sat on—if they could be built at all. Further, the active track makes the adjoining property much less valuable than other parts of the property *996 that could, with improvement, have access to the public roads. Compounding the problem, the existing tree cover on the property was |10uneven and as it is, the nonmarketable existing trees and undergrowth would have to be cut on some of the lots to make them usable. No one proposed any division of the property that would allow 25 or more separate parcels to be carved out while maintaining the present value of the undivided property, and we cannot see how such a division could be accomplished. This is a very different case from Simpson v. Baker, 29,090 (La. App.2d Cir.1/22/97), 687 So.2d 1079, writ denied, 97-0484 (La.4/4/97), 692 So.2d 420, cited by appellants, where a regularly shaped property was partitioned in kind into seven shares, all with equal road access.
Further, division of the Pegues heirs’ irregularly shaped property into lots would reduce or eliminate the value of the property for forestry purposes. We find no error in the trial court’s finding that forestry, rather than residential or some other use, was the use of the property that would give it the most value.
DECREE
Because the trial court’s conclusion that the property could not be divided in kind is well supported by the record, the trial court’s judgment ordering the partition of the property by licitation is AFFIRMED. Costs of this appeal are assessed to appellants.
APPENDIX
*997 [[Image here]]

. Lazarus’ ownership share is 46189 / 164934.

. The smallest ownership interest appears to be 17204/6597360.

. This is labeled as a "woods road” on the map.

.' The photos were taken by defendants’ counsel,

. Plaintiff's counsel said that he stopped trying to calculate the lowest common denominator when it became clear that the number was in excess of 882.

. See also La. C.C.P. art. 4605, which provides in part: ‘‘Except as otherwise provided in Article 4606, the court has discretion to direct the manner and conditions of effecting the partition, so' that it will be most advantageous and convenient to the parties.” Further see La. C.C.P. art. 4606: "Except as otherwise provided by law, or unless the property is indivisible by nature or cannot *995 conveniently be divided, the court shall order the partition to be made in kind.”

. Both sides agreed that this was the minimum number of shares that the property could be divided into. If the property had to be divided up in accordance with the shares required by the different denominators of the fractional interests, the number of lots would be in the hundreds at least. Because the law requires that a partition in kind be done by “division into as many lots of nearly equal value as there are shares,” we are skeptical that the 25-lot division, or a division into two parts where the Pegues’ heirs take their part as a whole, is allowed by law despite the treatment to the contrary in National American Bank of New Orleans v. Cleveland, 273 So.2d 848 (La.App. 4th Cir.1973), writ denied, 276 So.2d 701 (La.1973).